TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorneys
Environmental & Community Safety
Crimes Section
     1300 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-4536
     Facsimile:  (213) 894-6436
     E-mail:  joseph.johns@usdoj.gov

GUSTAV W. EYLER
Director
United States Department of Justice
Consumer Protection Branch
ALLAN GORDUS
NATALIE N. SANDERS
MARYANN N. MCGUIRE
Trial Attorneys
     450 5th St NW, Suite 6400 South
     Washington, DC 20001
     Telephone: (202) 307-1862
     Facsimile: (202) 514-8742
     E-mail: allan.gordus@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                    UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:21-CR-00498-MCS |
|---|---|
| Plaintiff, | |
| v. | DEFERRED PROSECUTION AGREEMENT FOR DEFENDANTS GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, AND HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. |
| GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, and HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., | |
| Defendants. | |

1.    This constitutes the deferred prosecution agreement between defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("Gree Zhuhai") and defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. ("Gree Hong Kong") and the United States Department of Justice's Consumer Protection Branch ("CPB") and the United States Attorney's Office for the Central District of California ("USAO" and collectively with the CPB, the "government") in the above-captioned case.  This agreement is limited to the CPB and the USAO, on the one hand, and Gree Zhuhai and Gree Hong Kong, on the other, and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

<u>GREE ZHUHAI'S AND GREE HONG KONG'S OBLIGATIONS</u>

2.    Gree Zhuhai and Gree Hong Kong agree to:

a.    No later than ten (10) business days after the Effective Date of this agreement, pay the forfeiture and monetary penalty described in Paragraphs 27 and 28 of this agreement respectively.

b.    Pay restitution as set forth in Paragraphs 17-26 of this agreement.

c.    Sign, file, and enter a Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods Pursuant to Speedy Trial Act, in the form attached to this agreement as Exhibit E or a substantially similar form.

d.    Comply with all terms in this agreement and the Enhanced Compliance Measures attached hereto as Exhibit D, which is incorporated herein by reference.

e.    Admit, accept, and acknowledge responsibility for the acts of their officers, employees, and agents as set forth in this agreement and the Statement of Facts attached hereto as Exhibit B.

f.    Not contest or contradict any facts or information agreed to in this agreement and the Statement of Facts attached hereto as Exhibit B or their admissibility in proceedings related to this agreement.

g.    Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

h.    Cooperate with the government as set forth in Paragraph 16 of this agreement.

i.    Not commit any federal, state, or local crime.

j.    Be truthful at all times with the government and the Court.

THE GOVERNMENT'S OBLIGATIONS

3.    The government agrees to:

a.    Sign, file, and enter a Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods Pursuant to Speedy Trial Act, in the form attached to this agreement as Exhibit E or a substantially similar form.

b.    If Gree Zhuhai and Gree Hong Kong are in full compliance with all of their obligations under this agreement at the conclusion of the deferred prosecution term described in Paragraphs 6-10, within 15 calendar days of the conclusion of the term, move to dismiss the one-count Information.

c.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute Gree Zhuhai or Gree Hong

3

Kong for criminal and/or civil violations arising out of their conduct described in this agreement and the Statement of Facts attached to this agreement as Exhibit B (the "Covered Conduct"). Gree Zhuhai and Gree Hong Kong understand that the government is free to prosecute them criminally for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

<u>WAIVER OF INDICTMENT AND VENUE</u>

4.    Gree Zhuhai and Gree Hong Kong acknowledge and agree that the government will file a one-count information in the United States District Court for the Central District of California, in the form attached to this agreement as Exhibit A or a substantially similar form, that charges Gree Zhuhai and Gree Hong Kong with Failure to Furnish Information Required by 15 U.S.C. § 2064(b), in violation of 15 U.S.C. §§ 2068(a)(4) and 2070 (the "Information").

5.    Having been fully advised by their attorneys, Gree Zhuhai and Gree Hong Kong hereby knowingly, voluntarily, and intelligently waive, relinquish, and give up:

a.    Any right to indictment on the charge in the Information;

b.    All rights to a speedy trial on the charge in the Information pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); and

c.    Any objection to venue in the United States District Court for the Central District of California for the charge in the Information or any other charge arising out of the Covered Conduct.

TERM OF AGREEMENT

6.    This agreement is effective on the date on which the Information is filed (the "Effective Date").

7.    Unless voided or extended as allowed in Paragraphs 8-10 below, this agreement shall remain in effect for a period of three years after the Effective Date (the "Term").

8.    If, after the filing of the Information, the Court does not continue the trial date and make findings of excludable time periods pursuant to the Speedy Trial Act, then the parties agree that, with the exception of the parties' waiver of the statute of limitations in Paragraph 36, this agreement is null and void.

9.    Gree Zhuhai and Gree Hong Kong agree that, in the event the government determines, in its sole discretion, that either Gree Zhuhai or Gree Hong Kong has failed to perform or fulfill any obligation in this agreement, an extension or extensions of the Term of this agreement for both Gree Zhuhai and Gree Hong Kong may be imposed by the government, in its sole discretion, for up to a total additional time period of twelve months, without prejudice to the government's right to proceed as provided in Paragraph 38.b below. Any extension of this agreement is effective for both Gree Zhuhai and Gree Hong Kong and extends all terms of this agreement, including the terms of the Enhanced Compliance Measures in Exhibit D, for an equivalent period.

10.    In the event the government determines that an extension of the Term of this agreement is or may be warranted, the government will notify Gree Zhuhai and Gree Hong Kong in writing of its determination no later than ninety (90) days prior to the expiration of the Term.  Within forty-five (45) days of receipt of that notice,

5

1    Gree Zhuhai and/or Gree Hong Kong may respond to the government in

2    writing to explain the nature and circumstances of any alleged

3    failure to perform or fulfill any obligation in this agreement, as

4    well as the actions they have taken to address and remediate the

5    situation.  The government agrees to consider such explanation in

6    determining whether to extend the Term of this agreement.

7                      CIRCUMSTANCES OF THIS AGREEMENT

8        11.  The government enters into this agreement based on the

9    individual facts and circumstances presented in this case, including:

10            a.   The nature and seriousness of the Covered Conduct;

11            b.   The changes made by Gree Zhuhai since 2013 to improve

12   the safety of its products and to prevent violations of the Consumer

13   Product Safety Act, 15 U.S.C. § 2051 *et seq.* ("CPSA"), including Gree

14   Zhuhai's investments in expanded employee training and updated

15   policies, procedures, and supervisory structures with an emphasis on

16   preventing, detecting, and remediating defective products;

17            c.   Gree Zhuhai's enhancement and commitment to continuing

18   to enhance its compliance and product safety programs and internal

19   controls to ensure that they satisfy the elements set forth in the

20   Enhanced Compliance Measures in Exhibit D to this agreement, thereby

21   safeguarding the safety of their consumer products;

22            d.   Based on Gree Zhuhai's remediation and the current

23   state of its product safety and compliance programs, the fact that

24   the Covered Conduct ended in 2013, and Gree Zhuhai's agreement to

25   report to the government as set forth in the Enhanced Compliance

26   Measures in Exhibit D to this agreement, the government determined

27   that an independent compliance monitor was unnecessary;

28

6

e.   the acknowledgment by Gree Zhuhai and Gree Hong Kong of their conduct and their acceptance of responsibility for that conduct;

f.   the cooperation by Gree Zhuhai and Gree Hong Kong in the investigation of this matter and their commitment to continue that cooperation as provided in Paragraph 16 below; and

g.   the commitment by Gree Zhuhai and Gree Hong Kong to fulfill all of their obligations in this agreement.

CORPORATE AUTHORIZATION

12.   Gree Zhuhai and Gree Hong Kong represent that they are authorized to enter into this agreement.  Within five (5) business days of the signing and execution of this agreement by all parties, Gree Zhuhai and Gree Hong Kong shall provide the government a legal document certifying that each of them is authorized to enter into and comply with all of the provisions of this agreement.  Such legal document shall designate a company representative who is authorized to take the actions specified in this agreement, and shall also state that all legal formalities for such authorizations have been observed in the form attached to this agreement as Exhibit C.  Within five (5) business days of the filing of the Information, Gree Zhuhai and Gree Hong Kong shall file with the Court the same authorization documents previously provided to the government.

ORGANIZATIONAL CHANGES AND APPLICABILITY

13.   This agreement shall bind Gree Zhuhai and Gree Hong Kong, their successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest").  Gree Zhuhai and Gree Hong Kong, or their successors-in-interest, if applicable, shall provide the government

7

and the Court with notice in writing at least fifteen (15) days before of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to perform or fulfill any of their obligations in this agreement, including their ability to pay the monetary penalty or forfeiture in this agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter Gree Zhuhai's or Gree Hong Kong's responsibilities under this agreement.  Neither Gree Zhuhai nor Gree Hong Kong shall engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

## NATURE OF THE OFFENSE

14.  Gree Zhuhai and Gree Hong Kong understand that for each of them to be guilty of the crime charged in the Information, that is, Failure to Furnish Information Required by 15 U.S.C. § 2064(b)(3) and (4), in violation of Title 15, United States Code, Sections 2068(a)(4) and 2070, the following must be true: each of them knowingly and willfully failed immediately to inform the United States Consumer Product Safety Commission ("CPSC") upon obtaining information which reasonably supported the conclusion that their dehumidifiers contained a defect which created a substantial product hazard, that is, a substantial risk of injury to the public, and created an unreasonable risk of serious injury or death.

## PENALTIES

15.  Gree Zhuhai and Gree Hong Kong understand that the statutory maximum sentence that the Court can impose on each of them for a violation of Title 15, United States Code, Sections 2068(a)(4)

and 2070, is: a five (5) year period of probation; a fine of five hundred thousand dollars ($500,000) or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of four hundred dollars ($400).

<u>COOPERATION</u>

16.  Gree Zhuhai and Gree Hong Kong agree to cooperate fully with the government and any other government agency designated by the government in any and all matters relating to the Covered Conduct until the date upon which all investigations and prosecutions arising out of the Covered Conduct are concluded, whether or not those investigations and prosecutions are concluded within the Term specified in Paragraphs 7-10.  Gree Zhuhai and Gree Hong Kong's cooperation pursuant to this paragraph is subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, Gree Zhuhai and Gree Hong Kong must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and Gree Zhuhai and Gree Hong Kong bear the burden of establishing the validity of any such assertions.  This cooperation shall include, but is not limited to the following:

a.  Gree Zhuhai and Gree Hong Kong shall truthfully disclose all information not protected by a valid claim of attorney-client privilege with respect to their activities and those of any of their present and former directors, officers, employees, agents, representatives, and any others concerning all matters about which the government may inquire.  This obligation of truthful disclosure includes Gree Zhuhai's and Gree Hong Kong's obligation to assemble, organize, and provide the government all non-privileged documents,

records, or other tangible evidence in their custody or control as the government may reasonably request.

b.   Gree Zhuhai and Gree Hong Kong shall provide testimony or information necessary to identify or establish the original location, authenticity, or other basis for admission into evidence of documents or other tangible evidence in any criminal, legal, court or other proceeding as the government may request.

c.   Gree Zhuhai and Gree Hong Kong shall, using their reasonable best efforts, make available their present and former officers, directors and employees to provide information and/or testimony as the government may request, including testimony before a grand jury, a trial court, or other legal or court proceeding, as well as interviews with law enforcement authorities.  Gree Zhuhai's and Gree Hong Kong's cooperation under this paragraph shall include identification of witnesses who have material information relating to the Covered Conduct, including identification of witnesses who have particular types of material information requested by the government. It is further understood that Gree Zhuhai and Gree Hong Kong must at all times provide complete, truthful, and accurate information.

d.   Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall testify truthfully before the grand jury and at any trial or other proceeding with respect to any matters about which they may be questioned.  Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall at all times give complete, truthful, and accurate information and testimony.  Gree Zhuhai and Gree Hong Kong (and their directors, officers, employees, agents, and representatives) shall neither attempt to protect any person who has

1  been involved in criminal activity, nor falsely implicate anyone in
2  criminal activity.

3                              RESTITUTION

4       17.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to
5  individuals who were directly and proximately harmed, either through
6  physical injury or financial loss, by a fire or overheating caused by
7  one of their dehumidifiers that were manufactured in 2007 through
8  2013, sold in the United States, and subject to the recall that Gree
9  Zhuhai announced on September 12, 2013, expanded on January 30, 2014,
10 and re-announced on November 29, 2016.  Gree Zhuhai and Gree Hong
11 Kong agree to pay restitution to such individuals in the amounts
12 determined by the United States Magistrate Judge or Special Master
13 through the procedures in Paragraphs 20-25 below.  The restitution
14 owed to such individuals shall be reduced by the amount of
15 compensation that they have already received for their losses through
16 earlier payments from Gree Zhuhai, Gree Hong Kong, Gree USA, Inc.
17 ("Gree USA"), or other sources, including but not limited to,
18 insurance.

19      18.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to
20 entities that were directly and proximately harmed by a fire or
21 overheating that was caused by one of their dehumidifiers that were
22 manufactured in 2007 through 2013, sold in the United States, and
23 subject to the recall that Gree Zhuhai announced on September 12,
24 2013, expanded on January 30, 2014, and re-announced on November 29,
25 2016.  Gree Zhuhai and Gree Hong Kong agree to pay restitution to
26 such entities in the amounts determined by the United States
27 Magistrate Judge or Special Master through the procedures in
28 Paragraphs 20-25 below.  The restitution owed to such entities shall

11

1   be reduced by the amount of compensation that they have already

2   received for their losses through earlier payments from Gree Zhuhai,

3   Gree Hong Kong, Gree USA, or other sources, including but not limited

4   to, insurance.

5       19.   Gree Zhuhai and Gree Hong Kong agree that all such

6   individuals and entities mentioned in Paragraphs 17 and 18 are

7   victims of the crime of which they are charged or other uncharged

8   crimes related to that charged crime.

9       20.   Gree Zhuhai and Gree Hong Kong agree to the appointment of

10  a United States Magistrate Judge or Special Master to determine the

11  proper payment of the restitution set forth in Paragraphs 17 and 18.

12  Gree Zhuhai and Gree Hong Kong agree that the United States

13  Magistrate Judge or Special Master, as determined by the Court,

14  should make findings of fact regarding:

15      a.   Who should receive restitution under Paragraphs 17 and

16  18; and

17      b.   The restitution amounts that these individuals and

18  entities should receive.

19      21.   In connection with the administration and disposition of

20  restitution in this matter, Gree Zhuhai and Gree Hong Kong agree that

21  the United States Magistrate Judge or Special Master should:

22      a.   Notify potential claimants of the restitution claim

23  process within one hundred twenty (120) days of Gree USA's sentencing

24  proceeding;

25      b.   Collect restitution claims for a period of one hundred

26  eighty (180) days after the date of the last notice to potential

27  claimants.  Restitution claims submitted later than one hundred

28

1    eighty (180) days after the date of the last notice to potential

2    claimants are not eligible for restitution;

3              c.   Determine the validity of each submitted restitution

4    claim, and for each valid claim, determine the amount of restitution

5    owed for that claim;

6              d.   Implement appropriate procedures necessary to carry

7    out the foregoing duties within one hundred twenty (120) days of Gree

8    USA's sentencing proceeding;

9              e.   Promptly notify Gree Zhuhai, Gree Hong Kong, Gree USA

10   and the government of all claims received; and

11             f.   Report to the Court every sixty (60) days following

12   Gree USA's sentencing proceeding on the status of the United States

13   Magistrate Judge's or Special Master's work to date, anticipated

14   future efforts, and any matters the United States Magistrate Judge or

15   Special Master believes require the Court's attention.

16       22.  If the United States Magistrate Judge or Special Master

17   decides that restitution is owed on a claim, Gree Zhuhai and Gree

18   Hong Kong will pay that claim within ten (10) days after the United

19   States Magistrate's or Special Master's decision becomes final.  The

20   United States Magistrate Judge's or Special Master's decision becomes

21   final forty-five (45) days after the first notice to Gree Zhuhai,

22   Gree Hong Kong or Gree USA of the decision.

23             a.   Gree Zhuhai and Gree Hong Kong will pay any

24   restitution award of fifty thousand dollars ($50,000) or less within

25   ten days after the United States Magistrate Judge's or Special

26   Master's decision becomes final.  Gree Zhuhai and Gree Hong Kong have

27   no right to appeal any decision awarding restitution of fifty

28   thousand dollars ($50,000) or less.

b.   Gree Zhuhai and Gree Hong Kong may appeal in a court of competent jurisdiction any decision awarding restitution greater than fifty thousand dollars ($50,000).  If Gree Zhuhai or Gree Hong Kong appeal or challenge the United States Magistrate Judge's or Special Master's decision within forty-four (44) days after the first notice of the decision to Gree Zhuhai, Gree Hong Kong or Gree USA, the United States Magistrate Judge's or Special Master's decision does not become final until all of Gree Zhuhai's and Gree Hong Kong's appeals have been exhausted.

c.   All decisions by the United States Magistrate Judge or Special Master will be vested in their discretion and, if contested, will be reviewed under the arbitrary-and-capricious standard set forth in 5 U.S.C. § 706(2)(A).  Review of any decision by the United States Magistrate Judge or Special Master will be based exclusively on the written record before the United States Magistrate Judge or Special Master at the time of the decision.  No discovery will be taken in a challenge to the United States Magistrate Judge's or Special Master's decision.

23.  Gree Zhuhai and Gree Hong Kong will have a reasonable opportunity to investigate and challenge any claim before the United States Magistrate Judge or Special Master makes a decision on a claim.  Gree Zhuhai's and Gree Hong Kong's reasonable opportunity to investigate and challenge a claim will not exceed six (6) months from the first notification to Gree Zhuhai, Gree Hong Kong or Gree USA of the claim, unless the United States Magistrate Judge or Special Master decides to extend the time for Gree Zhuhai or Gree Hong Kong to investigate and challenge a claim.  In no event will Gree Zhuhai's and Gree Hong Kong's opportunity to investigate and challenge a claim

14

exceed twelve (12) months after the first notification to Gree Zhuhai, Gree Hong Kong or Gree USA of the claim.

24.   The United States Magistrate Judge or Special Master may request from the Court a reasonable extension of the time periods in the preceding paragraphs as circumstances warrant.

25.   Gree Zhuhai and Gree Hong Kong shall promptly provide to the United States Magistrate Judge or Special Master all documentary materials or testimonial information reasonably requested by the United States Magistrate Judge or Special Master, subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, Gree Zhuhai and Gree Hong Kong must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and Gree Zhuhai and Gree Hong Kong bear the burden of establishing the validity of any such assertions.

26.   Gree Zhuhai and Gree Hong Kong shall pay in full any costs, fees, and expenses the United States Magistrate Judge or Special Master incurs in carrying out his or her duties separate and apart from any restitution paid to victims with valid restitution claims.

<u>FORFEITURE</u>

27.   As a result of the Covered Conduct, Gree Zhuhai and Gree Hong Kong agree to pay to the United States thirty-nine million dollars ($39,000,000) (the "Stipulated Forfeiture Amount") representing the assets associated with their violation of 15 U.S.C. §§ 2068(a)(4) and 2070.

a.   Gree Zhuhai and Gree Hong Kong agree that:

i.   the facts set forth in the Statement of Facts attached as Exhibit B to this agreement are sufficient to establish

15

1 that the Stipulated Forfeiture Amount is subject to civil forfeiture

2 to the United States; and

3             ii.  this agreement and the Statement of Facts may be

4 attached to and incorporated into the Civil Forfeiture Complaint to

5 be filed against the Stipulated Forfeiture Amount.

6         b.  By this agreement, Gree Zhuhai and Gree Hong Kong

7 waive service of said Civil Forfeiture Complaint and agree that a

8 Final Order of Forfeiture may be entered against the Stipulated

9 Forfeiture Amount.

10         c.  Upon payment of the Stipulated Forfeiture Amount, Gree

11 Zhuhai and Gree Hong Kong shall:

12             i.  release any and all claims they may have to such

13 funds; and

14             ii.  execute such documents as necessary to accomplish

15 the forfeiture of the funds.

16         d.  Gree Zhuhai and Gree Hong Kong agree that they will

17 not file a claim with the Court or otherwise contest the civil

18 forfeiture of the Stipulated Forfeiture Amount and will not assist a

19 third party in asserting any claim to the Stipulated Forfeiture

20 Amount.

21         e.  The forfeiture of the Stipulated Forfeiture Amount

22 shall be final and shall not be refunded.

23         f.  Gree Zhuhai or Gree Hong Kong shall transfer thirty-

24 nine million dollars ($39,000,000) to the United States within ten

25 (10) business days of the Effective Date of this agreement.  Such

26 transfer shall be made by wire transfer to the United States,

27 pursuant to wire instructions provided by the government.

28

1    g.   It is understood that nothing in this agreement

2  constitutes an agreement by the government that the forfeiture amount

3  in this paragraph is the maximum forfeiture that may be imposed in

4  any future prosecution of Gree Zhuhai or Gree Hong Kong, and that the

5  government is not precluded from then arguing or presenting evidence

6  in any future prosecution that the Court should impose a higher

7  forfeiture amount.  However, it is further understood that in the

8  event of a future prosecution, the government agrees that it will

9  recommend to the Court that any amount forfeited by Gree Zhuhai under

10  this agreement should be offset against any forfeiture or fine that

11  the Court might impose as part of a future judgment.

12                        <u>MONETARY PENALTY</u>

13    28.  Gree Zhuhai, Gree Hong Kong and the government agree that

14  the appropriate total monetary penalty is fifty-two million two

15  hundred thousand dollars ($52,200,000)(the "Total Monetary Penalty"),

16  of which five hundred thousand dollars ($500,000) will be paid as a

17  criminal fine on behalf of Gree Zhuhai's and Gree Hong Kong's United

18  States subsidiary Gree USA, in connection with Gree USA's guilty plea

19  and plea agreement filed simultaneously herewith.

20    a.   Gree Zhuhai, Gree Hong Kong, and the government agree

21  that the Total Monetary Penalty is appropriate given the facts and

22  circumstances of this case.

23    b.   The government recognizes that Gree Zhuhai, Gree Hong

24  Kong, and Gree USA have already paid fifteen million four hundred and

25  fifty thousand dollars ($15,450,000) to the United States in

26  connection with their settlement of the CPSC's related civil penalty

27  action against them.  The government agrees that this payment of

28  fifteen million four hundred and fifty thousand dollars ($15,450,000)

17

to the United States shall be credited against the Total Monetary
Penalty pursuant to the "Coordination of Corporate Resolution
Penalties and/or Joint Investigations and Proceedings Arising from
the Same Misconduct" Policy in the Department of Justice Manual 1-
12.100.

c.   Gree Zhuhai and Gree Hong Kong agree to pay thirty-six
million two hundred and fifty thousand dollars ($36,250,000) of the
Total Monetary Penalty to the United States within ten (10) business
days of the Effective Date of this agreement.  Gree Zhuhai or Gree
Hong Kong will make this payment by wire transfer according to the
wire instructions provided by the government.

d.   Gree Zhuhai and Gree Hong Kong agree to pay five
hundred thousand dollars ($500,000) of the Total Monetary Penalty as
a criminal fine on behalf of Gree USA (the "Criminal Fine Payment")
no later than ten (10) business days after the entry of judgment of
Gree USA's sentence by the Court.  Gree Zhuhai and Gree Hong Kong
agree to make the Criminal Fine Payment as a related company of Gree
USA.  Gree Zhuhai or Gree Hong Kong will make this payment by wire
transfer according to the wire instructions to be provided by the
government.

e.   All Total Monetary Penalty payments are final and
shall not be refunded.

f.   If Gree Zhuhai and Gree Hong Kong fail to timely make
the payments required in this paragraph, interest (at the rate
specified in Title 28, United States Code, Section 1961) shall accrue
on the unpaid balance through the date of payment.

g.   Nothing in this agreement shall be deemed an agreement
by the government that fifty-two million two hundred thousand dollars

18

1  ($52,200,000) is the maximum penalty that may be imposed in any

2  future prosecution of Gree Zhuhai or Gree Hong Kong, and the

3  government is not precluded from arguing in any future prosecution

4  that the Court should impose a higher fine, although the government

5  agrees that it will recommend to the Court that any amount paid under

6  this agreement should be offset against any forfeiture or fine that

7  the Court might impose as part of a future judgment.

8                  SUSPENSION, REVOCATION, AND DEBARMENT

9       29.  Gree Zhuhai and Gree Hong Kong understand that if either of

10  them hold any regulatory licenses or permits, this agreement may

11  result in the suspension or revocation of those licenses and permits.

12  The government makes no representation or promise concerning

13  suspension or debarment of Gree Zhuhai or Gree Hong Kong from

14  contracting with the United States or with any office, agency, or

15  department thereof.  Suspension and debarment of organizations is a

16  discretionary administrative action solely within the authority of

17  the federal contracting agencies.  Gree Zhuhai and Gree Hong Kong

18  understand that unanticipated collateral consequences such as this

19  will not serve as grounds to withdraw from this agreement.

20                           FACTUAL BASIS

21       30.  Gree Zhuhai, Gree Hong Kong, and the government agree to

22  the Statement of Facts attached hereto as Exhibit B and incorporated

23  herein by this reference, and agree that the Statement of Facts is

24  sufficient to support a conviction to the charges described in this

25  agreement.  The attached Statement of Facts is not meant to be a

26  complete recitation of all facts relevant to the underlying criminal

27  conduct or all facts known to the parties that relate to that

28  conduct.

31.   Gree Zhuhai and Gree Hong Kong admit, accept, and acknowledge that they are responsible under United States law for the acts of their officers, directors, employees, and agents, including the officers, directors, employees, and agents of Gree USA, as set forth in the Statement of Facts, and that the facts in the Statement of Facts are true and accurate.   Should the government pursue the prosecution that is deferred by this agreement, Gree Zhuhai and Gree Hong Kong stipulate to the admissibility of the Statement of Facts in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict anything in the Statement of Facts at any such proceeding.

## COMPLIANCE PROGRAM

32.   Gree Zhuhai and Gree Hong Kong further agree to comply with the terms of the Enhanced Compliance Measures, as set forth in Exhibit D and incorporated by reference herein, and to institute and maintain, at a minimum, the policies and procedures as described therein, which are intended to prevent future violations of law, including the CPSA and its implementing regulations.

## NOTICE

33.   Any notice to Gree Zhuhai or Gree Hong Kong under this agreement shall be given by: (1) email to an email address provided by Gree Zhuhai and Gree Hong Kong; and (2) personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

James M. Koukios
Sophia H. Cash
Morrison & Foerster LLP
2100 L Street, NW, Suite 900
Washington, DC 20037

34.   Any notice to the government under this agreement shall be given by: (1) email to an email address provided by the government; and (2) personal delivery, or overnight delivery by a recognized delivery service addressed to the following:

Director, Consumer Protection Branch
U.S. Department of Justice
450 5th St NW, Suite 6400 South
Washington, DC 20001

and

Chief, Environmental & Community
Safety Crimes Section
U.S. Attorney's Office
Central District of California
1300 United States Courthouse
312 North Spring Street
Los Angeles, California 90012

35.   Notice shall be effective upon actual receipt by the government or Gree Zhuhai or Gree Hong Kong.

<u>WAIVER OF STATUTE OF LIMITATIONS AND OTHER TIME DEFENSES</u>

36.   Having been fully advised by their attorneys regarding the application of the statute of limitations, the United States Constitution regarding prejudicial pre-indictment delay and the Speedy Trial Act to the Covered Conduct, Gree Zhuhai and Gree Hong Kong hereby knowingly, voluntarily, and intelligently waive, relinquish, and give up:

a.   Any right that each of them might have not to be prosecuted for any federal criminal offenses arising out of the Covered Conduct, including, but not limited to, the charge in the Information, because of the expiration of the statute of limitations for the offenses before the filing of the Information or indictment alleging the offenses; and

b.   any defense, claim, or argument each of them could raise or assert that prosecution for any federal criminal offenses arising out of the Covered Conduct, including, but not limited to, the charge in the Information, is barred by the expiration of the applicable statute of limitations, pre-indictment delay, or any speedy trial violation.

BREACH OF AGREEMENT

37. Gree Zhuhai and Gree Hong Kong agree that if either of them fails to perform or fulfill any of their obligations in this agreement ("a breach"), the government may declare this agreement breached.

a.   All of Gree Zhuhai's and Gree Hong Kong's obligations in this agreement are material.  A single breach of this agreement by either Gree Zhuhai or Gree Hong Kong is sufficient for the government to declare a breach of this agreement as to both Gree Zhuhai and Gree Hong Kong.

b.   The government's determination of whether Gree Zhuhai or Gree Hong Kong has breached this agreement is within the government's sole discretion and is not subject to review in any court or tribunal.  The government's determination of whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, Gree Zhuhai or Gree Hong Kong, will be imputed to either Gree Zhuhai or Gree Hong Kong for the purpose of determining whether either of them has breached this agreement shall be in the government's sole discretion.

c.   If the government receives evidence that either Gree Zhuhai or Gree Hong Kong has breached this agreement, the government agrees to give both of them written notice of any alleged breach

before making a determination of whether the agreement has been breached. Within forty-five (45) days of receipt of such notice, Gree Zhuhai and Gree Hong Kong shall have the opportunity to respond to the government in writing to explain the nature and circumstances of such alleged breach, as well as the actions they have taken to address and remediate the situation. The government shall consider their written explanation(s) before making a determination of whether either of them has breached this agreement.

38. If the government declares this agreement breached, the following shall occur:

a. the government will be relieved of all of its obligations in this agreement; and

b. Gree Zhuhai and Gree Hong Kong will thereafter be subject to:

i. prosecution for any federal criminal violation of which the government has knowledge, including, but not limited to, the charge in the Information and any other federal criminal violations relating to the Covered Conduct, which the government may bring in the United States District Court for the Central District of California or any other appropriate venue;

ii. any civil, administrative, or regulatory action that was either dismissed or not filed because of this agreement; and

iii. the imposition of monetary penalties ("Stipulated Penalties") as set forth in Paragraph 39 below.

39. Gree Zhuhai and Gree Hong Kong agree that the government, in its sole discretion, may seek the imposition of monetary penalties ("Stipulated Penalties") for any failure by either Gree Zhuhai or Gree Hong Kong to perform or fulfill any of their obligations in this

agreement, including, but not limited to, any obligations set forth in the Enhanced Compliance Measures attached to this agreement in Exhibit D.  Stipulated Penalties shall be calculated as five thousand dollars ($5,000) per day for each unperformed or unfulfilled obligation and assessed as follows:

a.    Upon the government's determination that either Gree Zhuhai or Gree Hong Kong has failed to perform or fulfill an obligation in this agreement, the government shall notify them in writing of their failure and the government's exercise of its contractual right to demand payment of the Stipulated Penalties (the "Demand Letter").  The Demand Letter shall set forth:

i.    The obligation that either Gree Zhuhai or Gree Hong Kong has failed, in the government's determination, to perform or fulfill;

ii.   The date on which either Gree Zhuhai or Gree Hong Kong first failed, in the government's determination, to perform or fulfill the obligation;

iii. A description of the obligation not met sufficient to permit Gree Zhuhai or Gree Hong Kong to cure (as described below); and

iv.   the amount of Stipulated Penalties claimed by the government as of the date of the Demand Letter.

b.    Within forty-five (45) days after receipt of the Demand Letter, or such other period as the government may agree in writing, Gree Zhuhai and/or Gree Hong Kong shall cure their failure to perform or fulfill the obligation identified by the government in the Demand Letter ("Cure Period").  If the failure is of a type that can be cured and either Gree Zhuhai or Gree Hong Kong cure the

failure within the Cure Period, no Stipulated Penalties shall be due. If neither Gree Zhuhai nor Gree Hong Kong cures the failure during the Cure Period, but one of them then subsequently cures the failure, Stipulated Penalties calculated from the date on which Gree Zhuhai and/or Gree Hong Kong first failed to perform or fulfill the obligation to the date of cure shall be immediately payable to the government.  If the failure is one that cannot be cured, then Stipulated Penalties calculated from the date on which Gree Zhuhai and/or Gree Hong Kong first failed to perform or fulfill the obligation until the date that one of them remediates the failure to the government's satisfaction shall be immediately payable to the government.

c.    Determination of whether Gree Zhuhai and/or Gree Hong Kong have failed to perform or fulfill an obligation in this agreement shall be in the government's sole discretion. Determinations of whether a failure to perform or fulfill an obligation in this agreement can be cured or has been cured, and determinations of when a failure has been cured or remediated shall all be in the government's sole discretion.

d.    The Stipulated Penalties shall be paid by electronic fund transfer according to wire transfer instructions that will be provided by the government.

e.    Gree Zhuhai and Gree Hong Kong agree that the United States District Court for the Central District of California shall have jurisdiction over any action to collect such a penalty.

f.    If Gree Zhuhai or Gree Hong Kong fail timely to make a required payment of Stipulated Penalties, interest (at the rate

specified in 28 U.S.C. § 1961) shall accrue on the unpaid balance through the date of payment.

40. For any criminal, civil, administrative, or regulatory action brought by the government against Gree Zhuhai or Gree Hong Kong pursuant to Paragraph 38.b, including to collect Stipulated Penalties, Gree Zhuhai and Gree Hong Kong agree that:

a. Any such action may be premised on information provided by Gree Zhuhai or Gree Hong Kong;

b. Any applicable statute of limitations for any such action is tolled between October 25, 2017, and the filing commencing any such action;

c. In addition to Gree Zhuhai's and Gree Hong Kong's waivers in Paragraph 36, Gree Zhuhai and Gree Hong Kong knowingly, voluntarily, and intelligently waive, relinquish, and give up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any action brought pursuant to Paragraph 38.b, except to the extent that such defenses existed as of October 25, 2017;

d. All statements made by or on behalf of either Gree Zhuhai or Gree Hong Kong to the government or to the Court, including the Statement of Facts attached to this agreement as Exhibit B, and any testimony given by either Gree Zhuhai or Gree Hong Kong before a grand jury, a court, or any tribunal, or at any legislative hearings, whether before or after this agreement, and any leads derived from such statements or testimony, shall be admissible in evidence against either Gree Zhuhai or Gree Hong Kong in any and all actions brought by the government against either Gree Zhuhai or Gree Hong Kong pursuant to Paragraph 38.b; and

e.    Gree Zhuhai and Gree Hong Kong knowingly, voluntarily, and intelligently waive, relinquish, and give up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements in Paragraph 40.d or any evidence derived from those statements should be suppressed or are inadmissible and neither Gree Zhuhai nor Gree Hong Kong shall assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of either Gree Zhuhai or Gree Hong Kong before or after this agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.

41.   Gree Zhuhai and Gree Hong Kong acknowledge that the government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the government declares this agreement breached and this matter proceeds to judgment.  Gree Zhuhai and Gree Hong Kong further acknowledge that any such sentence is solely within the discretion of the Court and that nothing in this agreement binds or restricts the Court in the exercise of such discretion.

## PUBLIC STATEMENTS BY GREE ZHUHAI AND GREE HONG KONG

42.   Gree Zhuhai and Gree Hong Kong agree that they shall not, through their present or future attorneys, officers, directors, agents, management level employees, or any other person authorized to speak for them, make any public statement, in litigation or otherwise, contradicting in whole or in part the facts described in

the Statement of Facts attached to this agreement in Exhibit B.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to Gree Zhuhai or Gree Hong Kong shall be at the sole discretion of the government.

COURT AND PROBATION OFFICE NOT PARTIES

43.  Gree Zhuhai and Gree Hong Kong understand that the Court and the United States Probation Office are not parties to this agreement.

PUBLICATION

44.  Within ten (10) days of the Effective Date of this agreement, Gree Zhuhai and Gree Hong Kong agree to make the Information, this agreement, and the Statement of Facts conspicuously available to the public on the Gree website (https://global.gree.com/usa/) for two (2) years after the Effective Date of this agreement.

NO ADDITIONAL AGREEMENTS

45.  Gree Zhuhai and Gree Hong Kong understand that, except as set forth herein, there are no promises, understandings, or agreements between the government and Gree Zhuhai or Gree Hong Kong or their attorneys, and that no additional promise, understanding, or agreement may be entered into unless in writing and signed by all parties or on the record in court.

///

///

///

///

///

1  AGREED AND ACCEPTED

2  **UNITED STATES ATTORNEY'S OFFICE**          UNITED STATES DEPARTMENT OF
   **FOR THE CENTRAL DISTRICT OF**              JUSTICE
3  **CALIFORNIA**                               CONSUMER PROTECTION BRANCH

4  TRACY L. WILKISON                            GUSTAV W. EYLER
5  Acting United States Attorney                Director
                                                Consumer Protection Branch
6  SCOTT M. GARRINGER
   Assistant United States Attorney
7  Chief, Criminal Division                     ALLAN GORDUS
                                                NATALIE N. SANDERS
8                                               MARYANN N. MCGUIRE
9                                               Trial Attorneys
   JOSEPH O. JOHNS  by AAG                      Consumer Protection Branch
10 DENNIS MITCHELL                              U.S. Department of Justice
   Assistant United States Attorneys
11

12 _____10/26/21_____                       _____10/26/21_____
13 Date                                         Date

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD.

2021.10.20

NAME:  Guoqing Gan
TITLE: Director
Authorized Representative of
Defendant
HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.

Date

10/21/2021

MORRISON & FOERSTER LLP
JAMES M KOUKIOS
SOPHIA H.CASH
On Behalf of Defendant
HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.

Date

1   DEFENDANT GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI

2

3   _____          2021. 10. 20
    NAME: Mingjing Li                        _____
    TITLE: Deputy Director,                  Date
4   Legal Department
    Authorized Representative of
5   Defendant
    GREE ELECTRIC APPLIANCES, INC. OF
6   ZHUHAI

7   _____          10/ 21/ 2021
    MORRISON & FOERSTER LLP                   _____
8   JAMES M. KOUKIOS                         Date
    SOPHIA H. CASH
9   On Behalf of Defendant
    GREE ELECTRIC APPLIANCES, INC. OF
10  ZHUHAI

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                              31

Exhibit C

<u>CERTIFICATION OF GREE ZHUHAI DEFENDANT</u>

I have been authorized by defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("defendant") to enter into this agreement on behalf of defendant. I have read this agreement in its entirety. This agreement has been read to me in Mandarin, the language which I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney. I understand the terms of this agreement, and I voluntarily agree to those terms on behalf of defendant. I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me or to defendant other than those contained in this agreement. No one has threatened or forced me or defendant in any way to enter into this agreement. I am satisfied with the representation of defendant's attorney in this matter.

_____          2021.10.20
NAME: Mingjing Li                  Date
Title: Deputy Director,
Legal Department
Authorized Representative of
Defendant GREE ELECTRIC
APPLIANCES, INC. OF ZHUHAI

32

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and Mandarin languages.  I accurately translated this entire agreement from English into Mandarin to defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI on this date.

_____Ling Liu_____          ____2021·10·12_____
INTERPRETER                              Date

33

1         <u>CERTIFICATION OF GREE ZHUHAI'S ATTORNEY</u>

2     I am defendant GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI's

3 attorney.  I have carefully and thoroughly discussed every part of

4 this agreement with the authorized representative of my client.

5 Further, I have fully advised my client and its authorized

6 representative of its rights, of possible pretrial motions that might

7 be filed, of possible defenses that might be asserted either prior to

8 or at trial, of the sentencing factors set forth in 18 U.S.C.

9 § 3553(a), of relevant Sentencing Guidelines provisions, and of the

10 consequences of entering into this agreement.  To my knowledge: no

11 promises, inducements, or representations of any kind have been made

12 to my client other than those contained in this agreement; no one has

13 threatened or forced my client in any way to enter into this

14 agreement; my client's decision to enter into this agreement is an

15 informed and voluntary one; and the factual basis set forth in this

16 agreement is sufficient to support conviction to the charge specified

17 in this agreement.

18

19                                     10/21/2021
  MORRISON & FOERSTER LLP                       Date
  JAMES M. KOUKIOS

20 SOPHIA H. CASH
  On Behalf of Defendant

21 GREE ELECTRIC APPLIANCES, INC. OF
  ZHUHAI

22

23

24

25

26

27

28

1          CERTIFICATION OF GREE HONG KONG DEFENDANT

2          I have been authorized by defendant HONG KONG GREE ELECTRIC

3    APPLIANCES SALES CO., LTD. ("defendant") to enter into this agreement

4    on behalf of defendant.  I have read this agreement in its entirety.

5    This agreement has been read to me in Mandarin, the language which I

6    understand best.  I have had enough time to review and consider this

7    agreement, and I have carefully and thoroughly discussed every part

8    of it with defendant's attorney.  I understand the terms of this

9    agreement, and I voluntarily agree to those terms on behalf of

10   defendant.  I have discussed the evidence with defendant's attorney,

11   and defendant's attorney has advised me of defendant's rights, of

12   possible pretrial motions that might be filed, of possible defenses

13   that might be asserted either prior to or at trial, of the sentencing

14   factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

15   Guidelines provisions, and of the consequences of entering into this

16   agreement.  No promises, inducements, or representations of any kind

17   have been made to me or to defendant other than those contained in

18   this agreement.  No one has threatened or forced me or defendant in

19   any way to enter into this agreement.  I am satisfied with the

20   representation of defendant's attorney in this matter.

21

22   NAME: Guoqing Gan                          Date 2021. 10. 20

23   TITLE: Director

24   Authorized Representative of
     Defendant HONG KONG GREE ELECTRIC
25   APPLIANCES SALES CO., LTD.

26

27

28

                                    35

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and
Mandarin languages.  I accurately translated this entire agreement
from English into Mandarin to defendant HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD. on this date.

_Ling Liu_ _____          _2021.10.12_ _____
INTERPRETER                          Date

1       CERTIFICATION OF GREE HONG KONG'S ATTORNEY

2           I am defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO.,

3   LTD.'s attorney.  I have carefully and thoroughly discussed every

4   part of this agreement with the authorized representative of my

5   client.  Further, I have fully advised my client and its authorized

6   representative of its rights, of possible pretrial motions that might

7   be filed, of possible defenses that might be asserted either prior to

8   or at trial, of the sentencing factors set forth in 18 U.S.C.

9   § 3553(a), of relevant Sentencing Guidelines provisions, and of the

10  consequences of entering into this agreement.  To my knowledge: no

11  promises, inducements, or representations of any kind have been made

12  to my client other than those contained in this agreement; no one has

13  threatened or forced my client in any way to enter into this

14  agreement; my client's decision to enter into this agreement is an

15  informed and voluntary one; and the factual basis set forth in this

16  agreement is sufficient to support conviction to the charge specified

17  in this agreement.

18

19  MORRISON & FOERSTER LLP                        |0/21/2021
    JAMES M. KOUKIOS                               Date
20  SOPHIA H. CASH
    On Behalf of Defendant
21  HONG KONG GREE ELECTRIC
    APPLIANCES SALES CO., LTD.
22

23

24

25

26

27

28

## CERTIFICATE OF CORPORATE RESOLUTIONS FOR GREE ZHUHAI

WHEREAS, Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai") has been engaged in discussions with the United States Department of Justice's Consumer Protection Branch ("CPB") and the United States Attorney's Office for the Central District of California (the "USAO") regarding issues relating to a knowing and willful failure to report information regarding consumer product safety defects, hazards, and risks to the United States Consumer Product Safety Commission (the "CPSC");

WHEREAS, in order to resolve such discussions, it is proposed that Gree Zhuhai agrees to the terms and obligations of a deferred prosecution agreement among Gree Zhuhai, Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong"), CPB, and the USAO (the "Deferred Prosecution Agreement"), and to certain terms of a plea agreement among Gree USA, Inc. ("Gree USA"), CPB, and the USAO (the "Plea Agreement");

WHEREAS, the Legal Representative and Chairman of the Board of Directors of Gree Zhuhai:

- possesses the authority to approve execution of the Deferred Prosecution Agreement and the Plea Agreement under Chinese law;

- has been extensively briefed on discussions with CPB and USAO regarding an agreement to resolve this matter;

- was informed of the principal terms of the Deferred Prosecution Agreement and the Plea Agreement by Gree Zhuhai's inside counsel, together with outside counsel for Gree Zhuhai, and agrees that Gree Zhuhai should enter into an agreement on those terms;

1

- has been provided with the Deferred Prosecution Agreement and the Plea Agreement and their attachments for review;

- has reviewed documents relevant to the Deferred Prosecution Agreement and the Plea Agreement and has discussed the final terms of the Deferred Prosecution Agreement and the Plea Agreement with Gree Zhuhai's inside counsel, together with outside counsel for Gree Zhuhai, who have provided advice of Gree Zhuhai's rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of agreeing to such terms and obligations of the Deferred Prosecution Agreement and the Plea Agreement;

Therefore, on behalf of Gree Zhuhai, the Legal Representative and Chairman of the Board of Directors of Gree Zhuhai, Mingzhu Dong, has APPROVED the following:

1.      Gree Zhuhai: (a) acknowledges the filing of the Information against Gree Zhuhai, Gree Hong Kong, and Gree USA, charging each company with one count of failure to furnish information required by Title 15, United States Code Section 2064(b)(3) and (4), in violation of Title 15, United States Code, Section 2068(a)(4) and 2070; (b) waives indictment on such charge and agrees to the obligations under the Deferred Prosecution Agreement and certain obligations under the Plea Agreement; (c) agrees that a total monetary penalty of $52,200,000, which will be reduced by $15,450,000 as credit for a civil penalty previously paid to the CPSC, for an adjusted total monetary penalty of $36,750,000 will be paid by Gree Zhuhai or Gree Hong Kong; (d) agrees that $500,000 of the total monetary penalty will be paid by Gree Zhuhai or Gree Hong Kong as a criminal fine on behalf of Gree USA; (e) agrees that a forfeiture amount of $39,000,000 will be paid by Gree Zhuhai or Gree Hong Kong; and (f) agrees to accept the restitution provisions of the Deferred Prosecution Agreement and the Plea Agreement;

2

2.      Gree Zhuhai accepts the terms and conditions of the Deferred Prosecution Agreement and the Plea Agreement, including but not limited to: (a) a knowing waiver of Gree Zhuhai's rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and the Federal Rule of Criminal Procedure 48(b); (b) a knowing waiver for purposes of the Deferred Prosecution Agreement and the Plea Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement of any objection with respect to venue and consents to the filing of the Information against Gree Zhuhai, as provided under the terms of the Deferred Prosecution Agreement and the Plea Agreement, in the United States District Court for the Central District of California; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement;

3.      The Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, is hereby authorized, empowered, and directed, on behalf of Gree Zhuhai, to agree to the terms of the Deferred Prosecution Agreement and to certain terms and obligations of the Plea Agreement substantially in such form as reviewed by the Legal Representative and Chairman of the Board of Directors of Gree Zhuhai, with such changes as the Deputy Director, Legal Department for Gree Zhuhai may approve;

4.      The Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms, or provisions of any agreement or other documents as may be

necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolutions;

5.      All of the actions of the Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, which would have been authorized by the foregoing resolutions except that such actions were taken prior to the adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Gree Zhuhai and its subsidiaries and affiliates; and

6.      The Deputy Director, Legal Department for Gree Zhuhai, Mingjing Li, and Jian Chen are hereby authorized, empowered, and directed to appear on behalf of Gree Zhuhai at any court appearances in connection with the Deferred Prosecution Agreement and the Plea Agreement.

Date: 2021.10.20                                By: 

4

## **CERTIFICATE OF CORPORATE RESOLUTIONS FOR GREE HONG KONG**

WHEREAS, Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong") has been engaged in discussions with the United States Department of Justice's Consumer Protection Branch ("CPB") and the United States Attorney's Office for the Central District of California (the "USAO") regarding issues relating to a knowing and willful failure to report information regarding consumer product safety defects, hazards, and risks to the United States Consumer Product Safety Commission (the "CPSC");

WHEREAS, in order to resolve such discussions, it is proposed that Gree Hong Kong agrees to certain terms and obligations of a deferred prosecution agreement among Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai"), Gree Hong Kong, CPB, and the USAO (the "Deferred Prosecution Agreement"), and to certain terms of a plea agreement among Gree USA, Inc. ("Gree USA"), CPB, and the USAO (the "Plea Agreement");

WHEREAS, the Chairman of the Board of Directors of Gree Hong Kong:

- possesses the authority to approve execution of the Deferred Prosecution Agreement and the Plea Agreement under Chinese law;

- has been extensively briefed on discussions with CPB and USAO regarding an agreement to resolve this matter;

- was informed of the principal terms of the Deferred Prosecution Agreement and the Plea Agreement by Gree Hong Kong's inside counsel, together with outside counsel for Gree Hong Kong, and agrees that Gree Hong Kong should enter into an agreement on those terms;

- has been provided with the Deferred Prosecution Agreement and the Plea Agreement and their attachments for review;

5

- has reviewed documents relevant to the Deferred Prosecution Agreement and the Plea Agreement and has discussed the final terms of the Deferred Prosecution Agreement and the Plea Agreement with Gree Hong Kong's inside counsel, together with outside counsel for Gree Hong Kong, who have provided advice of Gree Hong Kong's rights, possible defenses, the Sentencing Guidelines' provisions, and the consequences of agreeing to such terms and obligations of the Deferred Prosecution Agreement and the Plea Agreement;

Therefore, on behalf of Gree Hong Kong, the Chairman of the Board of Directors of Gree Hong Kong, Mingzhu Dong, has APPROVED the following:

1.     Gree Hong Kong: (a) acknowledges the filing of the Information against Gree Zhuhai, Gree Hong Kong, and Gree USA, charging each company with one count of failure to furnish information required by Title 15, United States Code Section 2064(b)(3) and (4), in violation of Title 15, United States Code, Section 2068(a)(4) and 2070; (b) waives indictment on such charge and agrees to the obligations under the Deferred Prosecution Agreement and certain obligations under the Plea Agreement; (c) agrees that a total monetary penalty of $52,200,000, which will be reduced by $15,450,000 as credit for a civil penalty previously paid to the CPSC, for an adjusted total monetary penalty of $36,750,000 will be paid by Gree Zhuhai or Gree Hong Kong; (d) agrees that $500,000 of the total monetary penalty will be paid by Gree Zhuhai or Gree Hong Kong as a criminal fine on behalf of Gree USA; (e) agrees that a forfeiture amount of $39,000,000 will be paid by Gree Zhuhai or Gree Hong Kong; and (f) agrees to accept the restitution provisions of the Deferred Prosecution Agreement and the Plea Agreement;

2.     Gree Hong Kong accepts the terms and conditions of the Deferred Prosecution Agreement and the Plea Agreement, including but not limited to: (a) a knowing waiver of Gree

Hong Kong's rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and the Federal Rule of Criminal Procedure 48(b); (b) a knowing waiver for purposes of the Deferred Prosecution Agreement and the Plea Agreement and any charges by the United States arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement of any objection with respect to venue and consents to the filing of the Information against Gree Hong Kong, as provided under the terms of this Deferred Prosecution Agreement and the Plea Agreement, in the United States District Court for the Central District of California; and (c) a knowing waiver of any defenses based on the statute of limitations for any prosecution arising out of the conduct described in the Statement of Facts attached to the Deferred Prosecution Agreement and the Plea Agreement;

3.     The Director for Gree Hong Kong, Guoqing Gan, is hereby authorized, empowered, and directed, on behalf of Gree Hong Kong, to agree to the terms of the Deferred Prosecution Agreement and to certain terms and obligations of the Plea Agreement substantially in such form as reviewed by the Chairman of the Board of Directors of Gree Hong Kong, with such changes as the Director for Gree Hong Kong may approve;

4.     The Director for Gree Hong Kong, Guoqing Gan, is hereby authorized, empowered, and directed to take any and all actions as may be necessary or appropriate and to approve the forms, terms or provisions of any agreement or other documents as may be necessary or appropriate to carry out and effectuate the purpose and intent of the foregoing resolutions;

5.     All of the actions of the Director for Gree Hong Kong, Guoqing Gan, which would have been authorized by the foregoing resolutions except that such actions were taken prior to the

7

adoption of such resolutions, are hereby severally ratified, confirmed, approved, and adopted as actions on behalf of Gree Hong Kong and its subsidiaries and affiliates; and

      6.    The Director for Gree Hong Kong, Guoqing Gan, and Jian Chen are hereby authorized, empowered, and directed to appear on behalf of Gree Hong Kong at any court appearances in connection with the Deferred Prosecution Agreement and the Plea Agreement.

Date: _2o21 · 10 · 20_

By: _____

8

**EXHIBIT A**

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>GREE ELECTRIC APPLIANCES, INC.<br>    OF ZHUHAI,<br>HONG KONG GREE ELECTRIC<br>    APPLIANCES SALES CO., LTD.,<br>    and<br>GREE USA, INC.,<br><br>             Defendants. | CR No.<br><br>I N F O R M A T I O N<br><br>[15 U.S.C. §§ 2068(a)(4), 2070:<br>Knowing and Willful Failure to<br>Report Information Regarding<br>Consumer Product Safety Defects,<br>Hazards, and Risks; 15 U.S.C.<br>§ 2070(c)(1), 18 U.S.C.<br>§ 981(a)(1)(C), 21 U.S.C. § 853,<br>28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |
|---|---|

The United States Department of Justice's Consumer Protection Branch and the Acting United States Attorney for the Central District of California charge:

[15 U.S.C. §§ 2068(a)(4), 2070]

[ALL DEFENDANTS]

A.   INTRODUCTORY ALLEGATIONS

    1.   By at least September 2012, in Los Angeles County, within the Central District of California, and elsewhere, defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., and GREE USA, INC., obtained information

which reasonably supported the conclusion that dehumidifiers manufactured, distributed, and sold in interstate commerce by the defendants contained a defect that caused those dehumidifiers to overheat and catch fire, creating a substantial product hazard, and created an unreasonable risk of serious injury and death to United States consumers who operated the dehumidifiers in their homes and businesses.

2.    Despite knowing that they were required immediately to inform the United States Consumer Product Safety Commission of the defects and risks of those dehumidifiers they manufactured, distributed, and sold in interstate commerce, defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., and GREE USA, INC., knowingly and willfully failed to inform the United States Consumer Product Safety Commission of those dehumidifiers' defects and risks until in or about June 2013.

B.    KNOWING AND WILLFUL FAILURE TO REPORT INFORMATION REGARDING CONSUMER PRODUCT SAFETY DEFECTS, HAZARDS, AND RISKS

3.    From on or about September 19, 2012, through at least on or about June 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI, HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD., and GREE USA, INC., knowingly and willfully failed to immediately report to the United States Consumer Product Safety Commission upon receiving information that reasonably supported the conclusion that the Chinese dehumidifiers contained a defect that could create a substantial product hazard, and created an unreasonable risk of

serious injury and death, as required by Title 15, United States Code, Section 2064(b)(3) and (4).

FORFEITURE ALLEGATIONS

[15 U.S.C. § 2070(c)(1); 18 U.S.C. § 981(a)(1)(C); 21 U.S.C. § 853;

28 U.S.C. § 2461(c)]

4.   Pursuant to Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will seek forfeiture as part of any sentence in accordance with Title 15, United States Code, Section 2070(c)(1) and Title 28, United States Code, Section 2461(c) in the event of any defendant's conviction under the sole count of this Information:

5.   Defendants shall forfeit the following property to the United States of America:

a.   all right, title, and interest in any and all property associated with any violation of the sole count of this Information; and

b.   to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subsection a.

7.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant shall forfeit substitute property, up to the total value of the property described in the preceding paragraph, if, as a result of

//
//
//
//
//
//
//

4

1   any act or omission of a defendant, the property described in the

2   preceding paragraph, or any portion thereof: (a) cannot be located

3   upon the exercise of due diligence; (b) has been transferred or sold

4   to, or deposited with a third party; (c) has been placed beyond the

5   jurisdiction of the court; (d) has been substantially diminished in

6   value; or (e) has been commingled with other property that cannot be

7   divided without difficulty.

8   TRACY L. WILKISON                     GUSTAV W. EYLER
    Acting United States Attorney         Director
9                                         Consumer Protection Branch

10

11
    SCOTT M. GARRINGER                    ALLAN GORDUS
12  Assistant United States Attorney      NATALIE N. SANDERS
    Chief, Criminal Division              MARYANN N. MCGUIRE
13                                        Trial Attorneys
    JOSEPH O. JOHNS                       Consumer Protection Branch
14  DENNIS MITCHELL                       Civil Division
    Assistant United States Attorneys     U.S. Department of Justice
15  Environmental & Community Safety
      Crimes Section
16

17

18

19

20

21

22

23

24

25

26

27

28

**Exhibit B**

**Statement of Facts**

Defendants Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai"), Gree USA, Inc. ("Gree USA"), and Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong") (collectively the "Gree Companies") hereby agree and stipulate that the following information is true and accurate.  The Gree Companies admit, accept, and acknowledge that they are responsible for the acts of their officers, directors, employees, and agents as set forth below.  The Gree Companies also admit, accept, and acknowledge that, had this matter proceeded to trial, the government would have proven beyond a reasonable doubt, by admissible evidence, the facts set forth below.

The Gree Companies

1.  From 2007 to September 2013, Gree Zhuhai was a large Chinese company that manufactured household appliances ("Gree appliances") for sale in and outside of China, including in the United States.

2.  From 2007 to September 2013, Gree Hong Kong was a Chinese subsidiary of Gree Zhuhai that exported Gree appliances to the United States.

3.  From 2010 to September 2013, Gree USA was a California corporation with offices in City of Industry, California, and a subsidiary of Gree Hong Kong.  Gree USA sold Gree appliances to retailers in the United States.  Those Gree appliances were manufactured by Gree Zhuhai and imported into the United States by Gree Hong Kong and Gree USA.  Gree USA was a joint venture between Gree Hong Kong and another company, MJC America Holdings Co., Inc. ("MJC America Holdings").  Gree Hong Kong was the majority owner of

1

Gree USA.  Gree USA's Chief Executive Officer ("CEO"), Chief
Financial Officer ("CFO"), who was the brother of Gree USA's CEO,
and Chief Administrative Officer ("CAO") were owners of MJC America
Holdings.  Gree USA's CEO, CFO and CAO effectively controlled Gree
USA.

4.  From 2010 to September 2013, Gree USA sold in the United
States dehumidifiers manufactured by Gree Zhuhai and imported into
the United States by Gree Hong Kong ("Gree dehumidifiers").

The Consumer Product Safety Commission and

the Consumer Product Safety Act

5.  The Consumer Product Safety Act (the "CPSA") was enacted to
protect the public from dangerous consumer products.

6.  The United States Consumer Product Safety Commission (the
"CPSC") is the federal agency responsible for protecting consumers
from dangerous consumer products and is the lead federal agency
responsible for the implementation, enforcement, and administration
of the CPSA.  The CPSC can order mandatory recalls of dangerous
products.

7.  The CPSA requires companies that manufacture, import,
distribute, or sell consumer products to inform the CPSC, among
other things, about any consumer product about which information
reasonably supports the conclusion that such product contains a
defect that could create a substantial product hazard, or creates an
unreasonable risk of serious injury or death.  This duty to report
also applies to the individual directors, officers, and agents of
those companies.  A company's or an individual's knowing and willful
failure to report an unsafe product to the CPSC is punishable as a
felony violation of the CPSA.

The Gree Companies Learn that Their Dehumidifiers

Are Catching Fire

8.  On or about July 26, 2012, the CEO of Gree USA saw a video of a burning Gree dehumidifier.  On July 26, 2012, Gree USA's CEO sent the video to a Gree Hong Kong manager ("Gree Hong Kong Manager #1"), who was also a director of Gree Hong Kong and in charge of exporting Gree appliances for sale in the United States, copying other Gree USA employees and a Gree Zhuhai employee.  In sending the video, Gree USA's CEO labeled the email "urgent," and said that the video was "scarey [sic] to just watch" and a "very serious issue with GREE product quality."  Gree USA's CEO also stated that the video was the third reported instance of a Gree appliance catching fire since in or about June 2012 and that it could lead to lawsuits against Gree USA as well as a recall costing millions of dollars. Gree USA's CEO knew that the Gree Companies had an obligation to inform the CPSC immediately of any consumer product that contained a defect creating a substantial product hazard or that created an unreasonable risk of serious injury or death.

9. Gree Hong Kong Manager #1, replied to the July 26, 2012 email from Gree USA's CEO that same day.  In his reply email, Gree Hong Kong Manager #1 said that "[w]e also felt shock when we watched the video[,]" and that he had sent the video to Gree Zhuhai's Quality Department and to Gree Zhuhai's chief engineer who was also its senior vice president for research and development.

The Gree Companies Learn that Two Defects in

Their Dehumidifiers are Causing Them to Catch Fire

10. During August 2012, Gree USA and Gree Zhuhai employees, engineers and officers investigated the Gree dehumidifiers for

3

potential defects that could cause them to catch fire.  No employee of Gree USA or Gree Zhuhai informed the CPSC of a defect or risk associated with the Gree dehumidifiers in August 2012.

11. On September 4, 2012, Gree USA's CEO emailed Gree Hong Kong Manager #1 about the Gree dehumidifiers.  The CEO stated that Gree USA had tested its dehumidifier inventory in Gree USA's warehouse and the testing showed that these dehumidifiers burned.  The CEO stated "the result is not like what you have told us" regarding how many units were involved because "the result shows the units all can catch the fire and apparently the material is not according to UL standard! I don't think the factory is telling us the fact and truth. . . ."  The CEO stated that, because of Gree USA's test results, he would have the dehumidifiers further tested for compliance with UL (formerly Underwriters Laboratory) standards and was planning to inform the CPSC about the Gree dehumidifiers.

12.  On September 5, 2012, Gree Hong Kong Manager #1 emailed Gree USA's CEO instructing "Gree USA to resolve the claim and CPSC case" and stating that Gree Zhuhai would "fully indemnify Gree USA for any expense and responsibility."  That same day, Gree USA's CEO replied and requested more details regarding who would pay the costs that could result from the Gree dehumidifiers and when they would pay, and offered to handle reporting the Gree dehumidifiers to the CPSC if Gree Zhuhai would agree to pay all future costs related to the dehumidifiers' defects.  Gree Hong Kong Manager #1 replied on September 6, 2012, stating that they were willing to agree to compensate expenses in a timely manner and that Gree USA "would be the single entity to reply insurance company and CPSC, [and] we will provide the necessary supports of test records and technical

4

information if you need any."  After these communications, no one from the Gree Companies informed the CPSC about the Gree dehumidifiers or their defects.

13. On September 10, 2012, Gree USA's CEO emailed the highest ranking person at Gree Zhuhai, the chairperson of Gree Zhuhai's board who also served as Gree Zhuhai's President and CEO, copying no one else from Gree Zhuhai or Gree Hong Kong.  In this email, Gree USA's CEO stated that "GREE headquarters" had told him not to report the Gree dehumidifiers to the CPSC.  Specifically, the Gree USA CEO stated that "GREE headquarters" had told him not to report that the Gree dehumidifiers may be defective and catch on fire and that they might have overheating parts and plastic parts that could burn because the plastic did not meet the UL standard for fire resistance.  Gree USA's CEO warned in his email that any company or individual who withheld from the CPSC information about a dangerous product could face severe punishment, including criminal prosecution.  Gree USA's CEO asked how Gree Zhuhai would pay future costs related to the Gree dehumidifiers, including any potential harm to MJC America Ltd. ("MJC America"), a company owned by Gree USA's CEO, CFO and CAO which also sold the defective Gree dehumidifiers.  Gree USA's CEO stated that if Gree Zhuhai did not give him clear instructions on how to handle the Gree dehumidifiers within a matter of days, then he would inform the CPSC about the dehumidifiers.  No one replied to this email.

14. On September 13, 2012, Gree USA's CEO sent another email to Gree Hong Kong Manager #1.  In this email, Gree USA's CEO discussed how a recall of the defective Gree dehumidifiers might be handled and attached the CPSC's "Recall Handbook."  Gree USA's CEO also

discussed the financial costs and lost sales that could result from a recall.  He did not express any consideration or concern about how defective Gree dehumidifiers could harm consumers.  Gree USA's CEO asked Gree Hong Kong Manager #1 to forward this email to Gree Zhuhai's chief engineer.

15. On September 19, 2012, Gree Hong Kong Manager #1 came to Gree USA's offices in City of Industry, California, to meet with Gree USA's CEO.  A Gree Zhuhai engineer and three other Gree USA officers also participated in the meeting.  This meeting was audio recorded by agreement.

16. At this September 19 meeting, Gree Hong Kong Manager #1 stated that Gree Zhuhai's testing of the Gree dehumidifiers was not able to reproduce the reported fire, but had revealed two defects: (1) the dehumidifiers used plastics that did not meet UL standards for fire resistance; and (2) electrical arcing caused by the dehumidifiers' compressors overheating could burn the non-UL standard plastic used in these dehumidifiers.  The Gree Zhuhai engineer at the meeting also discussed these defects.  Gree Hong Kong Manager #1 stated that he was aware of at least five consumer reports of Gree dehumidifiers overheating and catching fire but that Gree Zhuhai "still believe[d] that the fire case is a relatively isolated case . . . associated with atrocious conditions."  He also stated that Gree Zhuhai would modify the manufacture of all future dehumidifiers to fix this problem so they would not catch fire.

The Gree Companies Decide To Delay Reporting and Recalling
Their Defective Dehumidifiers

17. At this same September 19 meeting, Gree Hong Kong Manager #1 said that the meeting participants' decisions on what to do about

6

the Gree dehumidifiers should be guided by the principle of minimizing the costs and loss of reputation to the Gree Companies. Gree Hong Kong Manager #1 said that Gree Zhuhai wanted to delay any recall of the dehumidifiers for 6 to 9 months because delaying a recall would reduce the recall's effect on Gree dehumidifier sales. Gree Hong Kong Manager #1 stated that an immediate recall would have a significant, and negative, effect on 2012 and 2013 Gree dehumidifier sales.  Gree Hong Kong Manager #1 stated that a recall could be delayed 6 to 9 months because cooler fall and winter temperatures would help prevent Gree dehumidifiers from overheating and catching fire, and that there should be very few, if any, dehumidifier fires in the 6 to 9 months following September 2012.

18. In response to what Gree Hong Kong Manager #1 said, Gree USA's CEO said at the meeting that the Gree dehumidifiers' defects were very significant and had important legal implications.  But the Gree USA CEO did not push to inform the CPSC of the dehumidifiers. Rather, Gree USA's CEO recommended only that the Gree Companies have another company test the Gree dehumidifiers and then decide whether to delay the recall.  Gree Hong Kong Manager #1 responded by urging the Gree USA officers not to conduct such a test of the Gree dehumidifiers because that test would show that the dehumidifiers used plastic that did not meet UL standards for fire resistance. Gree USA's CEO said that the Gree USA officers understood what Gree Zhuhai was asking them to do and needed time to think before making a decision about how to proceed.

19. Two days after the September 19, 2012 meeting, Gree USA's CEO sent an email to Gree Zhuhai's chief engineer and copied the email to Gree Zhuhai's board chairperson.  In his September 21, 2012

email, Gree USA's CEO said that he understood that Gree Zhuhai
wanted to delay a recall of the Gree dehumidifiers for 6 to 9
months.  Gree USA's CEO also said that he thought that the Gree
dehumidifiers were still likely to catch fire, and that, after
careful consideration, Gree USA's officers had decided to report the
Gree dehumidifiers to the United States government.

20. The next day, Gree Zhuhai's chief engineer replied to the
September 21, 2012 email from Gree USA's CEO without copying Gree
Zhuhai's board chairperson.  In his September 22, 2012 email, Gree
Zhuhai's chief engineer said that Gree Zhuhai had clearly expressed
its opinion about how to handle the defective Gree dehumidifiers,
and that he hoped Gree USA's CEO would follow that opinion.  Gree
Zhuhai's chief engineer said that he had no authority to approve
what Gree USA's CEO proposed in his September 21, 2012 email and
that he hoped Gree USA's CEO would report his decision on how to
handle the defective Gree dehumidifiers to Gree Zhuhai's board
chairperson and listen to her opinion.

21. On September 28, 2012, Gree USA's CEO sent an email to Gree
Zhuhai's board chairperson, copying no one else from Gree Zhuhai or
Gree Hong Kong.  In his email, Gree USA's CEO stated again that
Gree's dehumidifiers had two known defects: (1) the compressors in
the dehumidifiers could overheat; and (2) the plastic in the
dehumidifiers did not meet UL standards for fire resistance, meaning
that the plastic would burn when overheated.  Gree USA's CEO said
that it was known that these two defects could cause the
dehumidifiers to catch fire and that there were numerous consumer
complaints about the dehumidifiers in fact catching fire.  Gree
USA's CEO also said that the Gree Companies had sold millions of

8

these defective dehumidifiers.  Gree USA's CEO further related that he believed the Gree Companies should recall the dehumidifiers and warn consumers that using them could result in personal injuries and property damage, but that Gree Zhuhai had not agreed to a recall. Gree USA's CEO warned that a recall could cost hundreds of millions of dollars, would harm the reputation of Gree products, and would reduce the Gree Companies' market share.  But Gree USA's CEO also warned that if Gree Zhuhai did not reach an agreement with Gree USA on the recall of the dehumidifiers, then Gree USA unilaterally would report the Gree dehumidifiers to the United States government.  Gree USA's CEO concluded his email by saying that this was a very important and urgent matter.  Neither Gree Zhuhai's board chairperson nor anyone else at Gree Zhuhai replied to this email.

22. Despite the Gree USA's CEO's September 4, 10, 21, and 28, 2012 emails, no employee of the Gree Companies reported the Gree dehumidifiers' defects or risks, or the known consumer complaints of fires related to the dehumidifiers, to the CPSC in September 2012.

23. In September 2012, Gree USA sold at least 24,999 defective Gree dehumidifiers to retailers in the United States for approximately $2,558,019.  The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards.  Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

9

The Gree Companies Continue to Sell

Their Defective Dehumidifiers in the United States

Without Reporting Them to the CPSC

24. On October 19, 2012, a sales representative for Gree USA met in person with Gree Zhuhai's board chairperson in China. During this meeting, the sales representative discussed the defective Gree dehumidifiers with Gree Zhuhai's board chairperson. Gree Zhuhai's board chairperson said that she would send a new Gree Hong Kong manager ("Gree Hong Kong Manager #2") to the United States to address the problems associated with the dehumidifiers.

25. In October 2012, Gree USA sent to Gree Zhuhai new consumer reports of fires related to the Gree dehumidifiers. These reports contradicted Gree Hong Kong Manager #1's statements at the September 19 meeting that a recall could be delayed 6 to 9 months because cooler fall and winter temperatures would help prevent dehumidifiers from overheating and catching fire and that there should be very few, if any, dehumidifier fires in the 6 to 9 months following September 2012. Despite these new consumer reports of fires caused by Gree dehumidifiers, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects or risks in October 2012.

26. In October 2012, Gree USA sold at least 2,938 defective Gree dehumidifiers to retailers in the United States for approximately $429,426. The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated. The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations

10

that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

### The Gree Companies Receive Another Test Report Showing
### That Their Dehumidifiers are Defective and Dangerous

27. In late October 2012, Gree USA sent two Gree dehumidifiers to an independent testing company for testing.  On November 5, 2012, the testing company wrote a report confirming and reiterating that the Gree dehumidifiers were defective because the compressors in the dehumidifiers could run continuously and thereby overheat to an "extreme high temperature."  Gree USA's CEO received this report on November 6, 2012.  Gree USA's CEO immediately sent the report to Gree Hong Kong Manager #2, who had taken over responsibility for the importation and sale of the Gree dehumidifiers in the United States from Gree Hong Kong Manager #1.

### The Gree Companies Continue to Sell
### Their Defective Dehumidifiers in the United States
### Without Reporting Them to the CPSC

28. At the end of November 2012, Gree USA's CEO told Gree Hong Kong Manager #2 that an attorney advised him to inform the CPSC immediately of all consumer reports of fires related to the Gree dehumidifiers.  Despite this legal advice and the November 5, 2012 test report reiterating that the Gree dehumidifiers were dangerously defective, no employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in November 2012.

29. In November 2012, Gree USA sold at least 6,817 defective Gree dehumidifiers to retailers in the United States for approximately $792,067.  The Gree Companies knew that the retailers

wanted dehumidifiers that met all UL standards and did not burn when overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

<u>The Gree Companies Have Yet Another Meeting to Discuss</u>
<u>Their Defective Dehumidifiers But Still Do Not Inform the CPSC</u>

30. On December 18, 2012, Gree USA's CEO and another Gree USA officer went with an attorney to Hong Kong to meet with Gree Hong Kong Manager #2, a Gree Zhuhai engineer, Gree Zhuhai's Chief Financial Officer ("CFO") and three attorneys representing Gree Zhuhai.  At this meeting, Gree USA's CEO discussed the November 5, 2012 test report with Gree Hong Kong Manager #2, the Gree Zhuhai engineer and the Gree Zhuhai CFO.  Gree Hong Kong Manager #2, the Gree Zhuhai engineer and the Gree Zhuhai CFO told Gree USA's CEO that Gree Zhuhai would test the Gree dehumidifiers and let him know the results of their testing.

31. No employee of the Gree Companies informed the CPSC about the dehumidifiers' defects, risks, or reported fires in December 2012.

32. In December 2012, Gree USA sold at least 1,395 defective Gree dehumidifiers to retailers in the United States for approximately $201,835.  The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations

that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

### The Gree Companies Decide to Keep Selling
### Their Defective Dehumidifiers in the United States
### Without Reporting Them to the CPSC

33. On January 23, 2013, a Gree USA officer sent an email to Gree Hong Kong Manager #2.  The email stated that Gree USA's and MJC America's insurance company suggested that Gree USA report the Gree dehumidifiers to the CPSC and recall all of the defective Gree dehumidifiers.  The email also stated that the insurance company "wanted to know if any actions were taken to test the product design in case it is defective" and was told that "the product was submitted to several different testing and no faulty [sic] in the design was found[,] also that new production has an extra protection[.]"  The Gree USA officer further reported in her email that Gree USA had received a new consumer report of a dehumidifier fire and asked how Gree USA should handle this report.

34. Also on January 23, 2013, Gree Zhuhai told Gree USA in writing that it had tested its dehumidifiers and that they were not defective and could be sold in the United States.  Gree Zhuhai did not provide Gree USA with any details on its testing or explain the inconsistency in its test results with those of all prior tests of the Gree dehumidifiers.

35. Despite the recommendation of Gree USA's insurance company to report the Gree dehumidifiers to the CPSC and recall the defective Gree dehumidifiers, and the new consumer report of fire, no employee of the Gree Companies informed the CPSC about the

dehumidifiers' defects, risks, or reported fires in January or February 2013.

36. Gree USA sold at least 7,609 and 29,857 defective Gree dehumidifiers in January and February 2013, respectively, to retailers in the United States for approximately $905,291, and $3,255,542, respectively.  The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards.  Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

<u>The Gree Companies Finally Report Their Defective Dehumidifiers</u>
<u>to the CPSC but Continue to Sell Those Dehumidifiers</u>
<u>in the United States</u>

37. On March 14, 2013, Gree USA, Gree Zhuhai, and MJC America made an initial report to the CPSC about their dehumidifiers.  The initial report stated that they had sold approximately 1.6 million Gree dehumidifiers in the United States since 2010, and that consumers who had purchased those dehumidifiers had reported fires, overheating, smoke, odors, and property damage related to these dehumidifiers.  The initial report did not mention the defects in the Gree dehumidifiers that caused the dehumidifiers to burn.

38. Gree USA sold at least 6,025 and 7,596 defective Gree dehumidifiers in March and April 2013, respectively, to retailers in the United States for approximately $571,702 and $799,244, respectively.  The Gree Companies knew that the retailers wanted dehumidifiers that met all UL standards and did not burn when

overheated.  The Gree Companies knew that Gree USA represented to its retailers that the Gree dehumidifiers met all UL standards. Gree USA's CEO, CFO and CAO knew that Gree USA's representations that these Gree dehumidifiers met all UL standards were false when these dehumidifiers were sold.

39. On April 23, 2013, the Chief Administrative Officer of Gree USA received an independent test report showing that the plastic used in four Gree dehumidifiers made in 2010, 2011, and 2012 did not meet UL standards for fire resistance.

40. On April 30, 2013, Gree USA, Gree Zhuhai, and MJC America made a second, more comprehensive report to the CPSC about their defective Gree dehumidifiers.  This report stated that Gree USA, Gree Zhuhai, and MJC America sold approximately 1.84 million of the Gree dehumidifiers and that they had not concluded that these Gree dehumidifiers posed a substantial product hazard or that the dehumidifiers needed to be recalled.  This report listed nineteen known consumer reports of fires involving Gree dehumidifiers with all but one of the fires occurring between June 14, 2012 and April 15, 2013.

41. After their April 30, 2013 report to the CPSC, the Gree Companies continued to receive consumer reports of fires caused by Gree dehumidifiers.

42. The Gree Companies received at least $9,500,000 from the distribution and wholesale of defective Gree dehumidifiers from September 2012 through April 2013.  Additionally, the Gree Companies received at least $29,500,000 from the distribution and wholesale of other non-defective Gree dehumidifiers from September 2012 through April 2013.

15

43. United States consumers lost at least $17,400,000 by purchasing defective and dangerous Gree dehumidifiers manufactured, distributed, or sold by the Gree Companies from September 2012 through April 2013.

44. From September 2012 to April 2013, United States consumers sustained at least $2,100,000 worth of property damaged or destroyed in fires caused by the defective Gree dehumidifiers.

### The Gree Companies Imported Their Defective Dehumidifiers
### With False UL Certifications

45. Between 2010 and at least until September 2012, the Gree Companies imported into the United States Gree dehumidifiers with certifications that the dehumidifiers met all UL standards, when in fact the dehumidifiers did not meet UL standards.

### The Gree Companies Finally Recall
### Their Defective Dehumidifiers

46. By mid-July 2013, Gree Zhuhai decided to recall its defective Gree dehumidifiers and notified the CPSC of this decision. After making this decision, Gree Zhuhai started to plan for the recall.

47. On September 12, 2013, Gree Zhuhai and the CPSC announced a voluntary recall of 2.2 million Gree dehumidifiers in the United States.

48. Despite its recall, Gree Zhuhai has received hundreds of consumer reports of fires and overheating caused by defective Gree dehumidifiers.  Consumers have reported more than 2,000 incidents involving Gree dehumidifiers, including 450 fires and more than $19,000,000 in property damage.

49. No later than September 19, 2012, each of the Gree Companies had information which reasonably supported the conclusion that their Gree dehumidifiers: (1) contained defects which created a substantial product hazard, that is, a substantial risk of injury to the public; and (2) created an unreasonable risk of serious injury or death.  After learning this information, each of the Gree Companies knowingly and willfully failed immediately to inform the United States Consumer Product Safety Commission about these dangerous defects in their Gree dehumidifiers or the dangerous risks posed by their Gree dehumidifiers.

50. As a result of the Gree Companies' failure to report immediately their defective Gree dehumidifiers to the United States Consumer Product Safety Commission, the Gree Companies were able to continue to distribute and wholesale their dehumidifiers, including defective Gree dehumidifiers, from September 2012 through April 2013, and received more than $39,000,000 in proceeds from this distribution and wholesale of Gree dehumidifiers.  For purposes of forfeiture, the approximately $39,000,000 that the Gree Companies received are assets associated with their failure to report immediately their defective Gree dehumidifiers to the United States Consumer Product Safety Commission in violation of 15 U.S.C. §§ 2068(a)(4) and 2070.

17

**Exhibit D**

**Enhanced Compliance Measures**

**I.   Compliance Program**

So as to address and further reduce the risk of any recurrence of the misconduct at issue in this matter, Defendants Gree Electric Appliances, Inc. of Zhuhai ("Gree Zhuhai"), Hong Kong Gree Electric Appliances Sales Co., Ltd. ("Gree Hong Kong"), and Gree USA, Inc. ("Gree USA") (collectively the "Gree Companies") hereby agree as part of Gree USA's Plea Agreement and Gree Zhuhai's and Gree Hong Kong's Deferred Prosecution Agreement with the United States Department of Justice's Consumer Protection Branch and the United States Attorney's Office for the Central District of California ("the government") to adopt and maintain, or modify as necessary, compliance programs, including internal controls, compliance policies, and procedures (collectively the "Compliance Program") to ensure product safety and compliance with the Consumer Product Safety Act, 15 U.S.C. § 2051 *et seq.* ("CPSA"), and regulations and agreements enforced by the United States Consumer Product Safety Commission ("CPSC") with respect to any consumer product manufactured, imported, distributed, or sold by the Gree Companies in the United States.  The Compliance Program, at a minimum, shall contain the following elements:

Written Standards, Policies and Procedures

1.   The Gree Companies shall establish and maintain, or modify as necessary, written standards, policies, and procedures with sufficient resources for responding to, investigating, and documenting allegations of potential product hazards, and violations of the CPSA, its implementing regulations, and agreements with the

1

CPSC, and which provides for the appropriate forwarding to personnel at the Gree Companies with authority to act ("Compliance Officer") of all information that may relate to, or affect, product safety and CPSA compliance, including all reports and complaints involving consumer products, whether an injury is referenced or not, and that may relate to, or affect, UL certification or listing, whether confirmatory testing has been conducted or not.

2.     The Gree Companies shall implement, maintain, and enforce an effective system of internal controls and procedures, to the extent that they do not yet exist, designed to ensure that, with respect to all consumer products manufactured, imported, or distributed by the Gree Companies and sold in the United States:

a.     information required to be disclosed by the Gree Companies to the CPSC is recorded, processed, and reported in accordance with applicable law;

b.     all required reporting made to the CPSC is timely, truthful, complete, accurate, and in accordance with applicable law; and

c.     prompt disclosure is made to the Gree Companies' relevant senior management of any deficiencies in the design or operation of such internal controls and procedures that are reasonably likely to adversely affect, in any material respect, the Gree Companies' ability to record, process, and report to the CPSC in accordance with applicable law.

<u>Confidential Employee Reporting</u>

3.     The Gree Companies shall establish or modify as necessary a confidential reporting program for their employees and agents who wish to disclose any concerns related to consumer product safety or

2

quality to a Compliance Officer or another senior manager with authority to act as necessary.

4.    The Gree Companies shall publicize the existence of the confidential reporting program annually to their employees and agents through emails, posting on Company intranets, live or online training, or other effective means.  The confidential reporting program shall include a non-retribution, non-retaliation policy, and shall facilitate anonymous and confidential communications for which appropriate confidentiality shall be maintained.

5.    Upon receipt of a disclosure related to consumer product safety or quality, a Compliance Officer or a senior manager with authority to act as necessary shall make a diligent, good-faith inquiry into the disclosure to ensure that he or she has obtained all the information necessary to determine whether a further review should be conducted.  The Compliance Officer or senior manager shall conduct such further review of for any disclosure that is sufficiently specific to:

a.    permit determination of the appropriateness of the alleged impropriety; and

b.    provide an opportunity for taking corrective action.

6.    The Compliance Officer or senior manager shall maintain a disclosure log, which shall include a record and an accurate and complete summary of each disclosure related to consumer product safety or quality received (whether anonymous or not), the status of the respective reviews, and any corrective action taken in response to the reviews.  All information gathered by the confidential reporting program shall be maintained for at least five (5) years following closure of the review and corrective action.

3

### Training and Enforcement

7.    The Gree Companies shall implement and maintain, or modify as necessary, mechanisms designed to ensure that the Compliance Program is effectively communicated to all applicable directors, officers, employees, and where necessary and appropriate, agents, vendors, and business partners.

8.    The Gree Companies shall establish and maintain, or modify as necessary, an effective system for providing guidance, training and advice to directors, officers, employees, and where necessary and appropriate, agents, vendors, and business partners, on complying with the CPSA, its implementing regulations, agreements with the CPSC, and the Compliance Program, including when they need advice on an urgent basis.

### Management Responsibility and Accountability

9.    The Gree Companies shall assign continuing responsibility for the implementation and oversight of the Compliance Program to one or more senior corporate executives who, by reason of background, experience, education, or training are competent to oversee product safety and regulatory compliance-related matters. Such corporate executive(s) shall have the authority to report directly to independent monitoring bodies, including internal auditors, the Company's Board of Directors, or any appropriate committee of the Board of Directors, and shall have an adequate level of autonomy from management as well as sufficient resources and authority to maintain such autonomy.

### Record Retention and Provision

10.    The Gree Companies shall ensure retention of all CPSA compliance-related records for at least five (5) years and shall

make such records available to the government or CPSC staff upon reasonable request, subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, the Gree Companies must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and the Gree Companies bear the burden of establishing the validity of any such assertions.

    11.  Upon reasonable request of the government or CPSC staff, the Gree Companies shall provide written documentation of their compliance-related improvements, processes, and controls, including, but not limited to, the effective dates of such improvements, processes, and controls.  Upon reasonable request, the Gree Companies shall cooperate fully and truthfully with the government and CPSC staff to make available, in a manner agreed to by the parties, all non-privileged information and materials, and personnel deemed necessary by the government or CPSC staff, to identify and evaluate records related to the Gree Companies' compliance with the CPSA, its implementing regulations, agreements with the CPSC, and the Compliance Program.  The Gree Companies' cooperation pursuant to this paragraph is subject to applicable laws and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine.  However, the Gree Companies must provide to the government a log of any document or information that is not provided based on an assertion of law, regulation, or privilege, and the Gree Companies bear the burden of establishing the validity of any such assertions.

### Compliance Expert

12.   The Gree Companies shall retain, at the Gree Companies' expense, an independent person or persons (the "Expert"), without personal or financial ties (other than the retention agreement between the parties) to the Gree Companies and/or the families of their senior management, who by reason of background, experience, education, and training, is qualified to advise the Gree Companies on product safety and regulatory compliance issues under the CPSA and its implementing regulations.  The Expert's qualifications shall include, but not be limited to, creating comprehensive product safety and regulatory compliance policies, designing employee training programs, and conducting regulatory compliance audits and inspections.  The Gree Companies shall notify the government in writing of the name(s) and qualifications of the Expert as soon as they retain the Expert.

13.   Within six months of the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong, the Expert shall, in consultation with the Gree Companies, start the process of auditing and advising the Gree Companies on the following aspects of their Compliance Program:

a.   written standards, policies and procedures that provide for the appropriate forwarding to compliance personnel of all information that may relate to, or impact, CPSA compliance, including all reports and complaints involving consumer products manufactured, imported, or distributed by the Gree Companies and sold in the United States, whether an injury is referenced or not;

b.   a mechanism for confidential employee reporting of compliance-related questions or concerns to either a compliance

officer or to another senior manager with authority to act as necessary;

       c.   effective communication of compliance-related policies and procedures regarding the CPSA to all applicable employees through training programs or otherwise;

       d.   senior management responsibility for CPSA compliance and accountability for violations of the CPSA and its implementing regulations; and

       e.   retention of all CPSA compliance-related records for at least five (5) years, and availability of such records to the government or CPSC staff upon reasonable request.

    14.  The Expert shall report to the government periodically, at no less than twelve-month intervals during a three-year term (the "Term"), regarding the Gree Companies' remediation and implementation of their Compliance Program and these Enhanced Compliance Measures.  The Term shall begin on the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong.  During the Term, the Expert shall submit an initial report and at least two (2) follow-up reports (collectively the "Expert Reports").

       a.  By no later than twelve (12) months from the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong, the Expert shall submit to the government a written report (the "initial Expert Report") setting forth a description of the Gree Companies' remediation efforts to date, and when necessary and appropriate, their proposals reasonably designed to improve their Compliance Program for ensuring consumer product safety and compliance with the CPSA.  The initial Expert Report

shall include an evaluation of the aspects of the Gree Companies'
Compliance Program set forth in Paragraph 13 above.

      b.   The Expert shall submit to the government at least
two (2) follow-up written reports (the "follow-up Expert Reports").
The first follow-up Expert Report shall be completed and delivered
to the government no later than twelve (12) months after the initial
Expert Report is submitted to the government.  The second follow-up
Export Report shall be completed and delivered to the government no
later than thirty (30) days before the end of the Term or twelve
(12) months after the first follow-up Expert Report, whichever is
earlier.  The follow-up Expert Reports shall assess whether the Gree
Companies' Compliance Program is reasonably designed to ensure
consumer product safety and compliance with the CPSA, and include an
evaluation of the aspects of the Gree Companies' Compliance Program
set forth in Paragraph 13 above.

      c.   The Expert Reports likely will include proprietary,
financial, confidential, and competitive business information.
Public disclosure of the Expert Reports could discourage cooperation
or impede pending or potential government investigations and thus
undermine the objectives of the reporting requirement.  For these
reasons, among others, the Expert Reports and contents thereof are
intended to remain and shall remain non-public, except as otherwise
agreed to by the Gree Companies and the government in writing, or
except to the extent that the government determines in its sole
discretion that disclosure would be in furtherance of the
government's discharge of its duties and responsibilities or is
otherwise required by law.

d.    The Expert or the Gree Companies may submit a timely written request for an extension of time to provide any of the Expert Reports.  A written request is timely if received by the government at least five (5) days before the date the report is due. Timely requests for extension will not be unreasonably denied.

## II.   Gree Reporting Requirements

15.   The Gree Companies shall report to the government periodically, at no less than twelve-month intervals during the three-year Term, regarding their remediation and implementation of the Compliance Program and these Enhanced Compliance Measures.  As with the Expert Reports, the Term shall begin on the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong.  During the Term, the Gree Companies shall:

a.    Conduct an initial review and submit an initial report; and

b.    Conduct and prepare at least two (2) follow-up reviews and reports, as described below.

16.   By no later than twelve (12) months from the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong, the Gree Companies shall submit to the government a written report (the "initial Gree Report") setting forth a complete description of their remediation efforts to date, and when necessary and appropriate, their proposals reasonably designed to improve the Gree Companies' Compliance Program for ensuring consumer product safety and compliance with the CPSA, and the proposed scope of the subsequent reviews.

17.   The Gree Companies shall undertake at least two (2) follow-up reviews and reports (the "follow-up Gree Reports"),

9

incorporating the government's views on the Gree Companies' previous reviews and reports, to further monitor and assess whether the Gree Companies' Compliance Program is reasonably designed to ensure consumer product safety and detect and prevent violations of the CPSA.

18.    The first follow-up Gree Report shall be completed and delivered to the government no later than twelve (12) months after the initial Gree Report is submitted to the government.  The second follow-up Gree Report shall be completed and delivered to the government no later than thirty (30) days before the end of the Term or twelve (12) months after the first follow-up Gree Report, whichever is earlier.

19.    The initial and follow-up Gree Reports may rely on, reference, or incorporate, in whole or in part, the Expert Reports.

20.    The Gree Reports likely will include proprietary, financial, confidential, and competitive business information. Public disclosure of the Gree Reports could discourage cooperation or impede pending or potential government investigations and thus undermine the objectives of the reporting requirement.  For these reasons, among others, the Gree Reports and contents thereof are intended to remain and shall remain non-public, except as otherwise agreed to by the Gree Companies and the government in writing, or except to the extent that the government determines in its sole discretion that disclosure would be in furtherance of the government's discharge of its duties and responsibilities or is otherwise required by law.

21.    The Gree Companies may submit a timely written request for an extension of time to provide any of the Gree Reports.  A written

request is timely if received by the government at least five (5) days before the date the report is due.  Timely requests for extension will not be unreasonably denied.

### III. Certifications and Resolutions

22.  In addition to the Gree Companies' reporting requirements set forth in Paragraphs 15-21, the Gree Companies shall make annual compliance-related certifications and resolutions to the government as described below:

a.  The Gree Companies shall conduct the reviews described in this paragraph and Paragraph 23 for each of three (3) Review Periods.  The duration of each Review Period shall be twelve (12) months, beginning with the first twelve (12) month period following the Effective Date of the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong.  The Gree Companies shall provide the certifications and resolutions described in this paragraph and Paragraph 23 to the government within one hundred twenty (120) days following the end of each of the Review Periods.

b.  Following the end of each Review Period, the President or Chief Executive Officer ("President") of Gree Zhuhai shall conduct a review of the Gree Companies' compliance with their obligations under the Compliance Program and these Enhanced Compliance Measures.  Based on his or her review, the President shall submit to the government a certification stating that, to the best of his or her knowledge based on a reasonable inquiry, during the preceding Review Period, the Gree Companies complied with all its obligations under the Compliance Program and these Enhanced Compliance Measures.  The certification shall summarize the review described above.  If the President is unable to provide any part of

this certification as specified herein, he or she shall provide a
detailed explanation of why he or she is unable to provide such
certification.  The certification and detailed explanation shall be
sworn to under the pains and penalty of perjury in the United States
(and, if applicable, under the pains and penalty of perjury in the
jurisdiction where the President makes the certification or detailed
explanation ("Other Jurisdiction")) and shall set forth that the
representations contained therein may be provided to, relied upon,
and material to the United States (and, if applicable, the Other
Jurisdiction), and that a knowing false statement could result in
criminal or civil liability for the signatory in the United States
(and, if applicable, the Other Jurisdiction).

23.  Following the end of each Review Period, the Board of
Directors of Gree Zhuhai or a designated Committee thereof (the
"Board"), shall conduct a review of the Gree Companies' compliance
with their obligations under the Compliance Program and these
Enhanced Compliance Measures.  The Board shall evaluate the Gree
Companies' compliance by, at a minimum, receiving updates about the
activities of management employees responsible for ensuring
compliance with the Compliance Program and these Enhanced Compliance
Measures, and updates about the adoption and implementation of
policies, procedures, and practices as it relates to such
compliance.  Based on its review, the Board shall submit to the
government a resolution that summarizes its review and oversight as
set forth above and that includes, at a minimum, the following
language:

> The Board of Directors of Gree Zhuhai (or a designated
> Committee of the Board) has made a reasonable inquiry

as described in Paragraph 23 of the Enhanced Compliance Measures Exhibit D to the Plea Agreement with Gree USA and the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong concerning the Gree Companies' compliance with their obligations under the Compliance Program and the Enhanced Compliance Measures in Exhibit D for the preceding Review Period, [insert date range], including the performance of management employees responsible for ensuring such compliance. Based on its reasonable inquiry and review, the Board has concluded that, to the best of its knowledge, the Gree Companies have complied with all their obligations under the Compliance Program and the Enhanced Compliance Measures in Exhibit D to the Plea Agreement with Gree USA and the Deferred Prosecution Agreement with Gree Zhuhai and Gree Hong Kong.

If the Board is unable to provide any part of this statement, it shall include in the resolution a written explanation of the reasons why it is unable to provide such a statement.

24. The Gree Companies may submit a timely written request for an extension of time to provide the annual President certification or Board resolution required in Paragraphs 22 and 23. A written request is timely if received by the government at least five (5) days prior to the date by which the certification or resolution is due. Timely requests for extension will not be unreasonably denied.

25. All certifications, resolutions, reports, notifications and other materials and information that must be provided to the government as a part of these Enhanced Compliance Measures shall be delivered by: (1) email to an email address provided by the government; and (2) personal delivery, or overnight delivery by a recognized delivery service addressed to the following:

Director, Consumer Protection Branch
U.S. Department of Justice
450 5th Street, NW, Suite 6400 South
Washington, DC 20001

13

and

Chief, Environmental and Community Safety Crimes Section
U.S. Attorney's Office
Central District of California
1300 United States Courthouse
312 North Spring Street
Los Angeles, CA 90012

1                              **Exhibit E**

2   TRACY L. WILKISON
    Acting United States Attorney
3   SCOTT M. GARRINGER
    Assistant United States Attorney
4   Chief, Criminal Division
    JOSEPH O. JOHNS (Cal. Bar No. 144524)
5   DENNIS MITCHELL (Cal. Bar No. 116039)
    Assistant United States Attorneys
6   Environmental and Community Safety
    Crimes Section
7        1300 United States Courthouse
         312 North Spring Street
8        Los Angeles, California 90012
         Telephone:  (213) 894-4536
9        Facsimile:  (213) 894-6436
         E-mail:  joseph.johns@usdoj.gov
10
    GUSTAV W. EYLER
11  Director
    United States Department of Justice
12  Consumer Protection Branch
    ALLAN GORDUS
13  NATALIE N. SANDERS
    MARYANN N. MCGUIRE
14  Trial Attorneys
    Consumer Protection Branch
15  U.S. Department of Justice
         P.O. Box 386
16       Washington, DC 20044
         Telephone: (202) 307-1862
17       Facsimile: (202) 514-8742
         Email:   allan.gordus@usdoj.gov
18  Attorneys for Plaintiff
    UNITED STATES OF AMERICA
19
                    UNITED STATES DISTRICT COURT
20
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
21
    UNITED STATES OF AMERICA,          Case No. CR 21-
22
              Plaintiff,               STIPULATION REGARDING REQUEST FOR
23                                      (1) CONTINUANCE OF TRIAL DATE AND
                 v.                     (2) FINDINGS OF EXCLUDABLE TIME
24                                      PERIODS PURSUANT TO SPEEDY TRIAL
    GREE ELECTRIC APPLIANCES, INC.      ACT; [proposed] ORDER
25  OF ZHUHAI, and
    HONG KONG GREE ELECTRIC
26  APPLIANCES SALES CO., LTD.,

27            Defendants.

28

1    Plaintiff United States of America, by and through its counsel
2    of record, the United States Department of Justice's Consumer
3    Protection Branch and the United States Attorney's Office for the
4    Central District of California (collectively, the "government"), and
5    defendants GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI ("GREE ZHUHAI")
6    and HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. ("GREE HONG
7    KONG"), both individually and by and through their counsel of record,
8    James M. Koukios and Sophie Cash, hereby stipulate as follows:
9        1.    The Information and Deferred Prosecution Agreement in this
10   case were filed on October 26, 2021.  The Speedy Trial Act, 18 U.S.C.
11   § 3161, originally required that the trial commence on or before
12   January 4, 2022.
13       2.    By this stipulation, the government, GREE ZHUHAI, and GREE
14   HONG KONG move to continue the trial date to October 26, 2024.  This
15   is the first request for a continuance of the trial date.
16       3.    The government, GREE ZHUHAI, and GREE HONG KONG request the
17   continuance based upon the following facts, which the parties believe
18   demonstrate good cause to support the appropriate findings under the
19   Speedy Trial Act:
20            a.    GREE ZHUHAI and GREE HONG KONG are charged with
21   Failure to Furnish Information Required by 15 U.S.C. § 2064(b), in
22   violation of 15 U.S.C. §§ 2068(a)(4) and 2070.
23            b.    GREE ZHUHAI and GREE HONG KONG have entered into a
24   Deferred Prosecution Agreement with the government, which was filed
25   on October 26, 2021.
26            c.    In light of the foregoing, the parties represent that
27   additional time is necessary for GREE ZHUHAI and GREE HONG KONG to
28

1    demonstrate their compliance with the provisions of the Deferred

2    Prosecution Agreement during the term of the agreement.

3         d.   The government, GREE ZHUHAI, and GREE HONG KONG

4    believe that failure to grant the continuance would be likely to make

5    a continuation of the proceeding impossible or result in a

6    miscarriage of justice.

7         e.   The requested continuance is not based on congestion

8    of the Court's calendar, lack of diligent preparation on the part of

9    the attorneys for the government or the defense, or failure on the

10   part of the attorneys for the government to obtain available

11   witnesses.

12        4.   For purposes of computing the date under the Speedy Trial

13   Act by which GREE ZHUHAI's and GREE HONG KONG's trial must commence,

14   the parties agree that the time period of October 26, 2021 to

15   October 26, 2024, inclusive, should be excluded pursuant to 18 U.S.C.

16   §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv) because the delay

17   results from a continuance granted by the Court at the government's,

18   GREE ZHUHAI's, and GREE HONG KONG's request on the basis of the

19   Court's finding that: (i) the ends of justice served by the

20   continuance outweigh the best interest of the public and GREE ZHUHAI

21   and GREE HONG KONG in a speedy trial; and (ii) failure to grant the

22   continuance would be likely to make a continuation of the proceeding

23   impossible, or result in a miscarriage of justice.

24        5.   In addition, the parties agree that the time period of

25   October 26, 2021 to October 26, 2024, inclusive, should be excluded

26   pursuant to 18 U.S.C. § 3161(h)(2) because the delay constitutes a

27   period during which prosecution is deferred by the attorneys for the

28   government pursuant to a written agreement with GREE ZHUHAI and GREE

3

1   HONG KONG, with the approval of the Court, for the purpose of

2   allowing GREE ZHUHAI and GREE HONG KONG to demonstrate their good

3   conduct.

4       6.    Nothing in this stipulation shall preclude a finding that

5   other provisions of the Speedy Trial Act dictate that additional time

6   periods be excluded from the period within which trial must commence.

7   Moreover, the same provisions and/or other provisions of the Speedy

8   Trial Act may in the future authorize the exclusion of additional

9   time periods from the period within which trial must commence.

10      IT IS SO STIPULATED.

11      Dated: October 26, 2021  Respectfully submitted,

12

13  UNITED STATES ATTORNEY'S OFFICE        UNITED STATES DEPARTMENT OF JUSTICE
    FOR THE CENTRAL DISTRICT OF            CONSUMER PROTECTION BRANCH
14  CALIFORNIA

15  TRACY L. WILKISON                      GUSTAV W. EYLER
16  Acting United States Attorney          Director
                                           Consumer Protection Branch
17  SCOTT M. GARRINGER
    Assistant U.S. Attorney
18  Chief, Criminal Division

19                                         ALLAN GORDUS
20                                         NATALIE N. SANDERS
    JOSEPH O. JOHNS  by AAG                MARYANN N. MCGUIRE
21  DENNIS MITCHELL                        Trial Attorneys
    Assistant U.S. Attorneys
22                                         10/26/21
23  10/26/21                               Date
24  Date

25

26

27

28

4

1

2

3          I am GREE ELECTRIC APPLIANCES, INC. OF ZHUHAI's attorney.   I

4    have carefully discussed every part of this stipulation and the

5    continuance of the trial date with my client.   I have fully informed

6    my client of its Speedy Trial rights.   To my knowledge, my client

7    understands those rights and agrees to waive them.   I believe that my

8    client's decision to give up the right to be brought to trial earlier

9    than October **2 6**, 2024 is an informed and voluntary one.

10

11   MORRISON FOERSTER LLP                    |0/21/2021
     JAMES M. KOUKIOS                         Date
12   SOPHIA H. CASH
     Attorneys for Defendant
13   GREE ELECTRIC APPLIANCES, INC. OF
     ZHUHAI
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   5

1    I have been authorized by defendant GREE ELECTRIC APPLIANCES,

2    INC. OF ZHUHAI ("GREE ZHUHAI") to enter into this stipulation. I

3    have read this stipulation and have carefully discussed it with GREE

4    ZHUHAI's attorney.  I understand GREE ZHUHAI's Speedy Trial rights.

5    On behalf of GREE ZHUHAI, I voluntarily agree to the continuance of

6    the trial date, and give up GREE ZHUHAI's right to be brought to

7    trial earlier than October **26**, 2024.

8                                                    2021.10.20

9    NAME: Mingjing Li                      Date

10   TITLE: Deputy Director,
     Legal Department

11
     Authorized Representative of
12   Defendant
     GREE ELECTRIC APPLIANCES, INC. OF
13   ZHUHAI.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                6

1

CERTIFICATION OF INTERPRETER

2       I, [Ling Liu], am fluent in the written and spoken English and

3 Mandarin languages.  I accurately translated this entire document

4 from English into Mandarin to defendant GREE ELECTRIC APPLIANCES,

5 INC. OF ZHUHAI on this date.

6

_____Ling Liu_____          ___2021.10.12_____

7 INTERPRETER                              Date

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

1        I am HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD.'s

2    attorney.  I have carefully discussed every part of this stipulation

3    and the continuance of the trial date with my client.  I have fully

4    informed my client of its Speedy Trial rights.  To my knowledge, my

5    client understands those rights and agrees to waive them.  I believe

6    that my client's decision to give up the right to be brought to trial

7    earlier than October **26**, 2024 is an informed and voluntary one.

8

9    MORRISON & FOERSTER LLP                    10/21/2021
     JAMES M. KOUKIOS                           Date
10   SOPHIA H. CASH
     Attorneys for Defendant
11   HONG KONG GREE ELECTRIC APPLIANCES
     SALES CO., LTD.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    I have been authorized by defendant HONG KONG GREE ELECTRIC

2 APPLIANCES SALES CO., LTD. ("GREE HONG KONG") to enter into this

3 stipulation.  I have read this stipulation and have carefully

4 discussed it with GREE HONG KONG's attorney.  I understand GREE HONG

5 KONG's Speedy Trial rights.  On behalf of GREE HONG KONG, I

6 voluntarily agree to the continuance of the trial date, and give up

7 GREE HONG KONG's right to be brought to trial earlier than October

8 **26**, 2024.

9    _____          2021·10·20
                                        _____
10 NAME:   Guoqing Gan                  Date

11 TITLE: Director

12 Authorized Representative of
   Defendant
13 HONG KONG GREE ELECTRIC APPLIANCES
   SALES CO., LTD.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                          9

CERTIFICATION OF INTERPRETER

I, [Ling Liu], am fluent in the written and spoken English and Mandarin languages.  I accurately translated this entire document from English into Mandarin to defendant HONG KONG GREE ELECTRIC APPLIANCES SALES CO., LTD. on this date.

*Ling Liu*                                              *2021.10.12*

INTERPRETER                                    Date

10

1 | TRACY L. WILKISON
Acting United States Attorney
2 | SCOTT M. GARRINGER
Assistant United States Attorney
3 | Chief, Criminal Division
JOSEPH O. JOHNS (Cal. Bar No. 144524)
4 | DENNIS MITCHELL (Cal. Bar No. 116039)
Assistant United States Attorneys
5 | Environmental and Community Safety
Crimes Section
6 |     1300 United States Courthouse
     312 North Spring Street
7 |     Los Angeles, California 90012
     Telephone:  (213) 894-4536
8 |     Facsimile:  (213) 894-6436
     E-mail:  joseph.johns@usdoj.gov
9
GUSTAV W. EYLER
10 | Director
United States Department of Justice
11 | Consumer Protection Branch
ALLAN GORDUS
12 | NATALIE N. SANDERS
MARYANN N. MCGUIRE
13 | Trial Attorneys
     450 5th St NW, Suite 6400 South
14 |     Washington, DC 20001
     Telephone: (202) 307-1862
15 |     Facsimile: (202) 514-8742
     E-mail: allan.gordus@usdoj.gov
16
Attorneys for Plaintiff
17 | UNITED STATES OF AMERICA

18 |                 UNITED STATES DISTRICT COURT

19 |            FOR THE CENTRAL DISTRICT OF CALIFORNIA

20 | UNITED STATES OF AMERICA,              Case No. CR 21-

21 |             Plaintiff,                 [proposed] ORDER CONTINUING TRIAL
                                           DATE AND FINDINGS REGARDING
22 |                 v.                     EXCLUDABLE TIME PERIODS PURSUANT
                                           TO SPEEDY TRIAL ACT
23 | GREE ELECTRIC APPLIANCES, INC.
       OF ZHUHAI, and
24 | HONG KONG GREE ELECTRIC
APPLIANCES SALES CO., LTD.,
25
            Defendants.
26

27

28

1    The Court has read and considered the Stipulation Regarding

2  Request for (1) Continuance of Trial Date and (2) Findings of

3  Excludable Time Periods Pursuant to Speedy Trial Act, filed by the

4  parties in this matter on October 26, 2021.  The Court hereby finds

5  that the Stipulation, which this Court incorporates by reference into

6  this Order, demonstrates facts that support a continuance of the

7  trial date in this matter, and provides good cause for a finding of

8  excludable time pursuant to the Speedy Trial Act, 18 U.S.C. § 3161.

9    The Court further finds that: (i) the ends of justice served by

10  the continuance outweigh the best interest of the public and

11  defendants in a speedy trial; (ii) failure to grant the continuance

12  would be likely to make a continuation of the proceeding impossible,

13  or result in a miscarriage of justice; and (iii) pursuant to 18

14  U.S.C. § 3161(h)(2), because the parties have entered into and filed

15  a deferred prosecution agreement and the time period would allow

16  defendants to demonstrate their good conduct.

17    THEREFORE, FOR GOOD CAUSE SHOWN:

18    1.    The trial in this matter is continued to October 26, 2024.

19    2.    The time period of October 26, 2021 to October 26, 2024,

20  inclusive, is excluded in computing the time within which the trial

21  must commence, pursuant to 18 U.S.C. § 3161(h)(2), (h)(7)(A),

22  (h)(7)(B)(i), and (h)(7)(B)(iv).

23    3.    Nothing in this Order shall preclude a finding that other

24  provisions of the Speedy Trial Act dictate that additional time

25  periods are excluded from the period within which trial must

26  commence.  Moreover, the same provisions and/or other provisions of

27  the Speedy Trial Act may in the future authorize the exclusion of

28

2

1   additional time periods from the period within which trial must

2   commence.

3        IT IS SO ORDERED.

4

5   _____          _____
6    DATE                                HONORABLE
                                         UNITED STATES DISTRICT JUDGE
7

8   Presented by:

       ____/s/_____
9   JOSEPH O. JOHNS
    DENNIS MITCHELL
10  Assistant United States Attorneys

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     3